# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

JEREMIAH C. SCHONEBERG,
                *Defendant-Appellant.*

No. 03-30127

D.C. No.
CR-01-00122-RFC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
February 13, 2004—Seattle, Washington

Filed November 17, 2004
Amended Opinion Filed January 27, 2005

Before: Dorothy W. Nelson, Andrew J. Kleinfeld, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Kleinfeld

## COUNSEL

Palmer A. Hoovestal, Hoovestal, Kakuk & Fanning, Helena, Montana, for the appellant.

James E. Sykora, Assistant United States Attorney, Billings, Montana, for the appellee.

## ORDER

The Opinion filed on November 17, 2004, and appearing at 388 F.3d 1275 (9th Cir. 2004), is amended as follows:

1.  At page 1276, delete "Magistrate Judge" and replace it with the following:

    District Judge

2.  At page 1280, at the end of the sentence beginning "Thus we are unable to," add footnote 13 and the following footnote text:

    Though the parties did not cite *United States v. Rudberg*, 122 F.3d 1199 (9th Cir. 1997), and *United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991), some interest has arisen within the court about whether this decision may be in tension with them. It is not. They are vouching cases, this is a Confrontation Clause case. The Confrontation Clause confers a right upon "the accused." U.S. CONST. amend. VI. The rule against vouching restricts conduct of a prosecutor, not the accused. Sometimes, as in *Old Chief v. United States*, 519 U.S. 172 (1996), or in the Sixth Amendment protection of the rights of "the accused," there are asymmetries between what the prosecution and defense may do in a criminal trial. The prosecution's use of the "truthful testimony" requirement of a plea bargain to *bolster* a prosecution witness's credibility may in some circumstances constitute impermissible vouching, as in *Rudberg*, and in some circumstances may not, as in *Monroe*, where the government introduced the "truthful testimony" aspects of the witness's plea agreement only after the defendant had attacked the witness's credibility. But the defense's use of a witness's plea agreement to *attack* a witness's credibility obviously cannot violate the rule that "[t]he government may not vouch for the credibility of its witnesses by presenting the jury with personal assurances of the witness's veracity." *Monroe*, 943 F.2d at 1013. We also

note that the district court judge can limit a witness's testimony or give cautionary instructions to the jury.

In regard to the opinion filed on November 17, 2004, no petition for rehearing was filed within the time required. Fed. R. App. P. 40. With this amendment, no petitions for rehearing or rehearing en banc shall be entertained.

## OPINION

KLEINFELD, Circuit Judge:

This is a Confrontation Clause case.

### Facts

Jeremiah Schoneberg was charged in an eleven-defendant indictment for participating in a marijuana-distribution and money-laundering conspiracy.[1] But he was tried alone. Robert Woodbury, the undisputed head of the group, had pled guilty and been sentenced pursuant to a plea bargain to serve a little under four years. In Schoneberg's trial, Woodbury, another conspirator who had also pled guilty pursuant to a plea bargain, and Schoneberg's ex-fiancée testified for the government. Schoneberg testified on his own behalf.

It was undisputed that when Woodbury, Schoneberg, and the other defendants named in the indictment were in high school together, Woodbury regularly sold marijuana to Schoneberg, and Woodbury and Schoneberg were friends. In high school, Schoneberg resold marijuana he had bought from Woodbury, though the quantities were disputed. The high-school dealing was long before the period of the conspiracy charged in the indictment.

---

[1] He was charged under 21 U.S.C. § 846 and 18 U.S.C. § 1956(a)(1)(A)(i).

After high school, the two remained friends, though they were less close because Schoneberg lived in other places for substantial periods. During the period of the alleged conspiracy, they were living in the same city and renewed their friendship. The government witnesses' accounts were basically that Woodbury, the head of the conspiracy, had delivered a pound of marijuana to Schoneberg, that Schoneberg was selling it in smaller quantities, and that on three occasions, Schoneberg wired money for Woodbury to give to Woodbury's dealer. Schoneberg's account was basically that Woodbury did indeed drop off a pound of marijuana at his house and insinuated that he wanted Schoneberg to resell it for him. But Schoneberg said he didn't do that. Instead, he and his then girlfriend (they got engaged later) smoked a little less than half of the marijuana. When Woodbury came for the money, they gave him back the marijuana that was left and some cash that Schoneberg had saved. Later, when Woodbury had someone threaten Schoneberg, Schoneberg's girlfriend wrote Woodbury a one-thousand-dollar check to cover the rest.

As for the money laundering, the indictment charged 31 transfers of money, three of them by Schoneberg. Woodbury's method was to pay someone else $50 or so to buy a money order at a grocery store and wire payment to a designated recipient. It was undisputed that Schoneberg wired money for Woodbury three times. Woodbury testified that Schoneberg knew he was wiring Woodbury's payment for Woodbury's marijuana inventory. Schoneberg testified that he was doing a favor for a friend and didn't know who the recipient was or what the money was for, though by the third time he was suspicious. Schoneberg's ex-fiancée's testimony offered considerable support for both sides of the story, though she testified for the government.

The case turned on whether the jury believed Woodbury or Schoneberg. The government had no audio or video tapes or other evidence independent of what Woodbury (and to some

extent Schoneberg's ex-fiancée said. The jury could reasonably infer from Woodbury's testimony that he recognized that he had been caught and had obtained a plea bargain requiring his cooperation, but had no more reason to lie since he had already been sentenced. The jury could have reasonably inferred that he was simply giving a truthful account of the facts. A special twist was Woodbury's testimony that his physicians had told him that he could expect to live less than his sentence because of cystic fibrosis and he could expect to die in prison. So it could have appeared to the jury that although Woodbury held out hope of outliving his doctors' expectations, he had nothing to gain from the government by lying.

But Woodbury's plea bargain reserved the possibility of a sentence reduction *after* his testimony against his co-conspirators. The government promised that if he provided "substantial assistance," the government would file a post-sentencing motion to reduce his sentence pursuant to Federal Rule of Criminal Procedure 35. As for whether he had provided "substantial assistance," that determination was to be "in the sole judgment of the United States Attorney's Office." He was required to testify truthfully, of course, but "[n]othing . . . limit[ed] the United States' method of verifying" his truthfulness.

Schoneberg's attorney got Woodbury's plea bargain into evidence, but was not permitted to cross examine Woodbury about whether his testimony was affected by the government's promise to move for a sentence reduction if his testimony satisfied the government. The trouble started when defense counsel asked Woodbury to confirm that under his agreement, "the only party that is going to determine whether you're telling the truth today, as you're standing on the witness stand, is the United States government, the United States Attorney." Woodbury answered, "I don't know sir. I don't know how the law works." Before defense counsel could begin punching away at what was arguably an evasive and misleading answer, the judge said, "What are you getting at?

The jury decides whether he's telling the truth." Defense counsel read Woodbury one of the paragraphs of his plea agreement and asked him to confirm that it meant "[t]he United States, those folks right there, a party to this lawsuit, are the sole people that determine whether you're telling the truth or not." Woodbury again claimed not to know "how the law works," and the prosecutor objected to defense counsel's question, saying "that's a misrepresentation." The judge agreed, "[T]he jury in this case is the sole determiner of the credibility of the witnesses in this case." Defense counsel kept trying, asking, "That means if they think that you're telling the truth and you've provided substantial assistance in the prosecution of ---." The prosecutor interrupted the question with an objection, and the judge said, "Stop that, . . . I am not going to tell you anymore. . . . I'm telling you not to talk about that it's the government's obligation to determine the truth, because it isn't. It's the jury's determination in this case." Defense counsel was unsuccessful in persuading the district judge that he was entitled to explore Woodbury's incentive to please the government. He did, however, get Woodbury to admit he had a motive to testify against Schoneberg in order to get his "Rule 35 motion."

The court recessed for the day as defense counsel strained to get more into evidence. After the jury left, the court again told counsel, "I don't want you telling the jury that it's the government's decision as to who is telling the truth in this case." Defense counsel again argued from the text of the plea agreement, saying "Well, it kind of is." But he was unsuccessful.

The jury convicted Schoneberg on both counts. He was sentenced to serve 78 months of imprisonment (Woodbury only got 42 months). He appeals.

## Analysis

As in many trials, the jury's task boiled down to deciding which of the two most important witnesses was lying to them.

The defendant had an obvious motive to lie, because his direct freedom was at stake, but so did the government's star witness. His motive was more subtle, as it arose from a plea agreement that left open the possibility that he might walk out the door a free man if the government was satisfied that his testimony was the truth.

The reason defense counsel, the court, and the prosecutor were all talking past each other was that there were two trials going on at the same time. For Schoneberg's trial, the judge was plainly correct that the jury was the sole judge of who was telling the truth. But Woodbury was on trial too. The verdict in his trial, however, would be a Rule 35 motion to reduce his sentence for substantial assistance. This verdict would be delivered by the United States Attorney's Office, and that office would be the sole judge of whether Woodbury was telling the truth. Unless Woodbury were a man of the highest "punctilio of . . . honor,"[2] which would be surprising for a dope dealer "rolling over" on his underlings, he would be thinking at every moment that he testified whether the Assistant United States Attorney would think that his testimony was true. And since the Assistant United States Attorney had no personal knowledge of the events, what he would think was true might not actually be true. The prosecutor's objections, and the court's rulings, prevented defense counsel from cross examining Woodbury on the significance of his testimony to this second "trial" that was taking place in the shadows.

[1] The Sixth Amendment right of the accused in a criminal prosecution "to be confronted with the witnesses against him"[3] guarantees him the right to cross examine those witnesses.[4] The Supreme Court in *Davis v. Alaska*[5] held that, even where

---

[2]*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.)

[3]U.S. CONST. amend. VI.

[4]*Douglas v. Alabama*, 380 U.S. 414, 418 (1965).

[5]*Davis v. Alaska*, 415 U.S. 308 (1974).

it offended a strong state policy of protecting confidentiality of juvenile proceedings, a criminal defendant was entitled to cross examine a witness about how his vulnerable status as a probationer gave him a motivation to please the prosecutor. *Davis* cannot be distinguished from the case at bar. The constitutional right to cross examine is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation,"[6] but that limitation cannot preclude a defendant from asking, not only "*whether* [the witness] was biased" but also "to make a record from which to argue *why* [the witness] might have been biased."[7] "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."[8]

[2] Here, the jury got to see the presentence agreement term regarding Rule 35 motions, but did not get to hear how this term might have affected Woodbury's motivation to satisfy the Assistant United States Attorney. The court did not restrict the inquiry to "preclude repetitive and unduly harassing interrogation," but rather on the erroneous ground that it was irrelevant and misleading, so we cannot sustain the limitation on cross examination as an exercise of permissible discretion. Schoneberg suffered a violation of his constitutional right of confrontation. Where a plea agreement allows for some benefit or detriment to flow to a witness as a result of his testimony, the defendant must be permitted to cross examine the witness sufficiently to make clear to the jury what benefit or detriment will flow, and what will trigger the benefit or detriment, to show why the witness might testify falsely in order to gain the benefit or avoid the detriment.

The government argues that we should sustain the district

---

[6]*Id.* at 316.

[7]*Id.* at 318 (emphasis added).

[8]*Id.* at 316-17.

court's exercise of discretion under *United States v. Johnson*,[9] but that argument is misplaced because *Johnson* involved whether the defendant could put on a separate expert witness, not whether he could cross examine the witness whose credibility was challenged. *United States v. Jenkins*[10] does not save the court's exercise of discretion in this case either because in *Jenkins* the court merely disallowed cross examination using the conclusory phrase "coercion and duress" when voir dire of the witness outside the presence of the jury established that those words did not apply to the facts the witness described, and the defense "was permitted to explore at length the pressures" that the witness felt from the government.[11]

**[3]** The government also argues that because our cases routinely say, as they must, that credibility of witnesses is solely within the province of the jury,[12] the cross examination would have invaded the province of the jury. This argument is unpersuasive. The credibility of witnesses in Schoneberg's trial was, of course, solely within the province of the jury, but to evaluate that credibility, the jury was entitled to know what motivation a witness might have to lie to them. Because a witness who is party to a forward-looking cooperation agreement, with truthfulness to be determined by the government, has a motivation to satisfy the government, the defendant is entitled through cross examination to prove to the jury that the witness has this incentive and that there may be reason to question the witnesses's credibility.

More to the point, the government argues that Schoneberg

---

[9]*United States v. Johnson*, 297 F.3d 845, 861-62 (9th Cir. 2002).

[10]*United States v. Jenkins*, 884 F.2d 433 (9th Cir. 1989).

[11]*Id.* at 437-438.

[12]*See*, *e.g.*, *United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002) (" 'It is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience.' ") (quoting *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998)).

was allowed to establish the terms of the plea agreement regarding the Rule 35 motion and that he got Woodbury to admit that he had a motive to testify against Schoneberg in order to get this Rule 35 motion. That goes far toward satisfying the constitutional requirement. It does not go far enough in this case, however, because counsel was not permitted to cross examine Woodbury about how he could earn his Rule 35 motion: by satisfying the government that he was telling the truth in his testimony against Schoneberg. Everyone in a trial speaks to an audience, usually the jury, but the audience that mattered to Woodbury's fate was not the jury, it was the prosecutor. Though arguably the predicate for Schoneberg's bias argument was sufficiently established by the words of Woodbury's plea agreement and his testimony showing that he knew its terms, Schoneberg's inquiry was cut off, and the judge's emphatic admonitions that the jury and not the prosecutor would judge whether Woodbury was telling the truth vitiated the predicate that Schoneberg's counsel had laid down. Thus we are unable to place the ruling within the area of permissible discretion.[13]

---

[13]Though the parties did not cite *United States v. Rudberg*, 122 F.3d 1199 (9th Cir. 1997), and *United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991), some interest has arisen within the court about whether this decision may be in tension with them. It is not. They are vouching cases, this is a Confrontation Clause case. The Confrontation Clause confers a right upon "the accused." U.S. CONST. amend. VI. The rule against vouching restricts conduct of a prosecutor, not the accused. Sometimes, as in *Old Chief v. United States*, 519 U.S. 172 (1996), or in the Sixth Amendment protection of the rights of "the accused," there are asymmetries between what the prosecution and defense may do in a criminal trial. The prosecution's use of the "truthful testimony" requirement of a plea bargain to *bolster* a prosecution witness's credibility may in some circumstances constitute impermissible vouching, as in *Rudberg*, and in some circumstances may not, as in *Monroe*, where the government introduced the "truthful testimony" aspects of the witness's plea agreement only after the defendant had attacked the witness's credibility. But the defense's use of a witness's plea agreement to *attack* a witness's credibility obviously cannot violate the rule that "[t]he government may not vouch for the credibility of its witnesses by presenting the jury with personal assurances of the witness's veracity." *Monroe*, 943 F.2d at 1013. We also note that the district court judge can limit a witness's testimony or give cautionary instructions to the jury.

Though constitutional error has been established, it is not sufficient to compel a result. Under *Delaware v. Van Arsdall*,[14] a confrontation clause violation does not result in automatic reversal, but rather is "subject to the *Chapman* harmless-error analysis."[15] The Supreme Court held in *Van Arsdall* that "[t]he correct inquiry is whether, assuming that the damaging potential of the cross examination were fully realized," we might nevertheless say that the error was "harmless beyond a reasonable doubt."[16] The importance of the testimony to the case, presence or absence of other evidence corroborating or contradicting the witness, extent of permitted cross-examination, and overall strength of the prosecution's case are among the factors we consider in determining whether the error is harmless.[17]

**[4]** We cannot conclude that the error was harmless here, particularly because Schoneberg testified, and gave a logically possible and not implausible account. It was plausible that, as the government would have it, Schoneberg was plainly and simply a marijuana dealer working for Woodbury. But Schoneberg's account is also plausible. He could have sold small quantities of marijuana that Woodbury had sold him some years before in high school, but not since. He could merely have been an enthusiastic marijuana user who enjoyed almost half of the pound of marijuana in his freezer with his then girlfriend, but did not sell any. He could have given the remainder back and paid for what he and his then girlfriend had smoked when Woodbury and his heavy came around for the proceeds. It was more of a stretch for Schoneberg to claim that he was merely accommodating a friend on the money transfers, and did not know that he was conducting financial transactions with an intent to further a drug conspiracy. But

---

[14]*Delaware v. Van Arsdall*, 475 U.S. 673 (1986).

[15]*Id.* at 684.

[16]*Id.*

[17]*Id.*

it would be too much to say that his account — that he suspected the money was from marijuana but did not know, and that his intent was merely to accommodate an old friend and not to further a drug conspiracy — was false beyond a reasonable doubt. The case turned on who was telling the truth, Woodbury or Schoneberg, and the judge's rulings and admonitions left the jury completely understanding Schoneberg's motivation to lie, but not fully informed about Woodbury's.

REVERSED.