UNITED STATES of America,
Plaintiff–Appellee,

v.

Libia Zulema MARQUEZ–LERMA,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Libia Zulema Marquez–Lerma,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Ibis Zamudio–Gomez, aka Ivis
Zamudio, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Ibis Zamudio–Gomez, aka Ivis
Zamudio, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

John Edward Fasching, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Alejandro Sequieros–Garcia,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Alejandro Sequieros–Garcia,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Alejandro Sequieros–Garcia,
Defendant–Appellant.

Nos. 04–30430, 04–30475, 04–30484,
04–30431, 04–30478, 04–30485,
04–30474, 04–30483.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 2006.

Sept. 27, 2006.

Palmer A. Hoovestal, Esq., Helena, MT, Lynn T. Hamilton, Esq., Hamilton Law Office, PC, Mesa, AZ, Darla J. Mondou, Esq., Marana, AZ, E. June Lord, Esq., Great Falls, MT, Defendant–Appellant.

Before: TASHIMA and W. FLETCHER, Circuit Judges, and POLLAK *, Senior District Judge.

## MEMORANDUM **

Defendants Libia Marquez–Lerma ("Marquez–Lerma"), Ibis Zamudio–Gomez ("Zamudio–Gomez"), Alejandro Sequieros–Garcia ("Sequieros–Garcia"), and John Fasching ("Fasching") in these consolidated appeals were convicted of several counts of Conspiracy to Possess with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.

They now appeal their convictions, contending that the district court erred in the following particulars: (1) by denying their motions to suppress statements made to law enforcement officers; (2) by violating their Sixth Amendment right to confrontation as a result of limiting their ability to cross-examine the Fernandez brothers and excluding the Fernandez brothers' plea

James E. Seykora, Esq., USBI—Office of the U.S. Attorney, Billings, MT, for Plaintiff–Appellee.

* The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

** The panel finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

agreements from evidence; (3) by denying their Rule 29(a) motions challenging the sufficiency of the evidence; and (4) by refusing to give a proposed jury instruction. All Defendants, except Fasching, also appeal their respective sentences. They contend that: (1) the district court erred by denying a four-level downward adjustment for minimal participation under U.S.S.G. § 3B1.2(a); and, (2) their sentences should be remanded in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[1]

### 1. Motions to Suppress

Fasching and Sequieros–Garcia contend that the district court erred in denying their respective motions to suppress statements they made to law enforcement because their *Miranda* waivers were invalid. A defendant's waiver of *Miranda* rights must be "voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir.1998) (internal quotation marks and citations omitted). We review the voluntariness of a waiver of *Miranda* rights *de novo*, and whether the decision was knowing and intelligent for clear error. *United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir.2005).

### A. Fasching

Fasching contends that his statements were not voluntary because he was suffering psychological and emotional distress caused by his nephew's recent death. "The burden is on the government to prove voluntariness, but the voluntariness of a waiver 'has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word.' " *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir.1997) (quoting *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515,

93 L.Ed.2d 473 (1986)). The test is whether, considering the totality of the circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the [defendant]'s will was overborne." *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir.1994) (internal quotation marks and citation omitted).

■ Fasching's nephew died on April 26, 2003, and Fasching attended the funeral on May 1, 2003. The agents waited until the day after the funeral before arresting Fasching on May 2, 2003. They testified that Fasching was coherent and reasonable at the time of questioning. Fasching does not allege that the agents used coercive interrogation tactics or "overreached" in any specific manner. Because the voluntariness inquiry is "not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion,' " *Connelly*, 479 U.S. at 170, 107 S.Ct. 515 (quoting *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)), we conclude that Fasching's *Miranda* waiver was voluntary.

Fasching also contends that his emotional state prevented him from making a knowing and intelligent waiver of his rights. Whether a waiver of *Miranda* rights is knowing and intelligent depends on the totality of the circumstances and whether the defendant "was aware of the nature of the right being abandoned and the consequences of the decision to abandon it." *Younger*, 398 F.3d at 1185 (internal quotation marks and citation omitted).

Fasching was not arrested immediately following his nephew's death, but rather, several days afterwards, thus reducing the likelihood of intense emotional distress.

---

1. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because the parties are familiar with the facts, we do not recite them in detail.

Additionally, all of the officers involved in Fasching's arrest testified that Fasching was "coherent" and "reasonable" and that they had no reason to suspect that his *Miranda* waiver was not knowing and intelligent. We thus conclude that the district court's finding that Fasching's *Miranda* waiver was knowing and intelligent was not clearly erroneous.

### B. Sequieros–Garcia

Sequieros–Garcia contends that his *Miranda* waiver was involuntary, but points to no evidence of coercion or police over-reaching. *See Connelly,* 479 U.S. at 170, 107 S.Ct. 515 (holding that police over-reaching is a necessary element of establishing that a *Miranda* waiver was involuntary). Our review of the record reveals absolutely no evidence of coercion or improper inducement. Accordingly, we conclude that Sequieros–Garcia's challenge to the voluntariness of his *Miranda* waiver is meritless.

■ Sequieros–Garcia also contends that his waiver of his *Miranda* rights was not knowing and intelligent because the indictment was not read to him, and because he did not understand English. In reviewing whether a *Miranda* waiver was knowing and intelligent, we consider: (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether the defendant had the assistance of a translator; (5) whether the defendant's rights were indi-

vidually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system. *Garibay,* 143 F.3d at 538.

Here, the record shows that two of the law enforcement agents who arrested Sequieros–Garcia who were fluent Spanish speakers, orally advised Sequieros–Garcia of the charges against him at the time of his arrest. Both agents also testified that Sequieros–Garcia was not questioned prior to being Mirandized. They further testified that Sequieros–Garcia was read his *Miranda* rights in both English and Spanish and provided a written version of his *Miranda* rights, which he read and appeared to understand. Accordingly, there is ample evidence to support the district court's finding that Sequieros–Garcia understood his rights, and that his waiver of those rights was knowing and intelligent. *See United States v. Labrada–Bustamante,* 428 F.3d 1252, 1259 (9th Cir.2005); *United States v. Rodriguez–Preciado,* 399 F.3d 1118, 1127–28 (9th Cir.2005).[2] That finding was not clearly erroneous.

### 2. Sixth Amendment Right to Confrontation

Marquez–Lerma, Zamudio–Gomez, and Fasching contend that the district court erred by refusing to allow them to cross-examine the Fernandez brothers about the punishments they avoided or the benefits gained as a result of their plea agreements. They also contend that the district court's error was compounded by its refus-

**2.** Sequieros–Garcia also appears to argue that the admission of his statements into evidence violated his Sixth Amendment right to counsel. However, "[a]s a general matter ... an accused who is admonished with the warnings prescribed by ... *Miranda,* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver

on this basis will be considered a knowing and intelligent one." *Patterson v. Illinois,* 487 U.S. 285, 296, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); *United States v. Karr,* 742 F.2d 493, 496 (9th Cir.1984). Because Sequieros–Garcia was properly Mirandized and expressly waived his right to counsel, this claim is unavailing.

al to admit the Fernandez brothers' plea agreements into evidence.

We review the district court's limitation on cross-examination for abuse of discretion. *United States v. Jackson,* 756 F.2d 703, 706 (9th Cir.1985). We also review the district court's evidentiary ruling excluding a plea agreement from evidence for abuse of discretion. *United States v. Sua,* 307 F.3d 1150, 1152 (9th Cir.2002).

Defendants rely heavily on *United States v. Schoneberg,* 396 F.3d 1036 (9th Cir.2005), where we held that a district court may not limit a defendant's ability to cross-examine a witness "[w]here a plea agreement allows for some benefit or detriment to flow to a witness as a result of his testimony." *Id.* at 1042. We also explained, however, in *Schoneberg:*

> The constitutional right to cross examine is subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, but that limitation cannot preclude a defendant from asking, not only *whether* the witness was biased, but also to make a record from which to argue *why* the witness might have been biased.

*Id.* (internal quotation marks, citations, and alteration marks omitted).

A review of the trial transcript indicates that Defendants' contentions are unfounded. The district court placed almost no limitation on defense counsel's ability to cross-examine the Fernandez brothers with regards to their plea agreements and their motive to testify against Defendants. In addition, defense counsel were able to use the plea agreements, as well as the use immunity letters given to the Fernandez brothers, for illustrative purposes.

■ Defendants' contention that the district court erred by denying their request to have the plea agreements admitted into evidence is equally unavailing.

The district court excluded the plea agreements because they contained a large amount of information that was not relevant to the trial, and the court was concerned that it could confuse the jury. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, ... confusion of the issues, ... or interrogation that is repetitive or only marginally relevant."); *Sua,* 307 F.3d at 1153. Moreover, the district court did allow defense counsel to read from the plea agreements and to publish them to the jury for illustrative purposes. The court also received the use immunity letters into evidence. Accordingly, we conclude that the district court did not abuse its discretion in limiting cross-examination, or by excluding the plea agreements from evidence.

### 3. Sufficiency of the Evidence

Fasching, Marquez–Lerma, and Zamudio–Gomez contend that the district court erred in denying their respective motions for acquittal brought pursuant to FED. R.CRIM.P. 29. "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt." *United States v. Hinton,* 222 F.3d 664, 669 (9th Cir.2000) (citation omitted).

■ We reject Fasching's challenge to the sufficiency of the evidence as to Counts VII, VIII, and IX of the indictment in No. CR 03–57. The jury heard sufficient evidence to find Fasching guilty of these crimes beyond a reasonable doubt. In addition, while the testimony regarding the specific dates of the conduct charged in

Counts VIII and IX was not very precise, several witnesses testified that Fasching engaged in regular methamphetamine transactions, as often as twice a month. *See United States v. Tsinhnahijinnie,* 112 F.3d 988, 991 (9th Cir.1997) ("The government ordinarily need prove only that the crime occurred on a date reasonably near the one alleged in the indictment, not on the exact date."). Whatever variance may have existed between the dates alleged in the indictment and the facts proved at trial did not affect Fasching's substantial rights. *See* FED.R.CRIM.P. 52(a) ("Any ... variance which does not affect substantial rights must be disregarded."). Thus, the district court did not err in denying Fasching's Rule 29 motion.

Further, the district court did not err in denying Marquez–Lerma's and Zamudio–Gomez's Rule 29 motions as to Counts V–XII of the indictment in No. CR 03–56 and Zamudio–Gomez's Rule 29 motion as to Counts VI and VII of the indictment in No. CR 03–57.[3] Witnesses testified extensively that Zamudio–Gomez and Marquez–Lerma were involved in the drug conspiracy and made regular drug transports beginning in May of 1999 and continuing throughout the span of the conspiracy. That testimony, however, was sufficient to support the delivery of only 50 pounds of marijuana in August 1999, rather than 100 pounds as charged in Count VIII of the indictment in No. CR 03–56. Accordingly, defendants Marquez–Lerma and Zamudio–Gomez are entitled to a remand for resentencing on this Count. *See United States v. Toliver,* 351 F.3d 423, 430–31 (9th Cir.2003).

In addition, the evidence presented at trial does not support Marquez–Lerma's convictions for Counts II, III, and IV of the indictment in No. CR 03–56, and Za-mudio–Gomez's convictions for Counts II, III, and IV of the indictment in No. CR 03–56 and Counts II, III, IV, V, and VIII of the indictment in No. CR 03–57. Hector Fernandez, the self-professed ringleader of the conspiracy, testified that he did not meet Zamudio–Gomez until May 1999. In addition, Hector's brother Eduardo Fernandez, who made separate drug transports from Arizona to Montana, testified that Hector, not he, recruited Zamudio–Gomez and Marquez–Lerma to participate in the conspiracy. Because these counts were alleged to have occurred prior to May 1999, the district court erred in denying Marquez–Lerma's and Zamudio–Gomez's Rule 29 Motions as to these counts. *See United States v. Lothian,* 976 F.2d 1257, 1262 (9th Cir.1992) (noting that "a defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from the conspiracy") (citing *Levine v. United States,* 383 U.S. 265, 266, 86 S.Ct. 925, 15 L.Ed.2d 737 (1966) (per curiam)).

### 4. Jury Instructions

Sequieros–Garcia argues that the district court erred when it denied his request to give the Fifth Circuit pattern jury instruction regarding the uncorroborated testimony of a co-conspirator who received preferential treatment. It is not error, however, "to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990). Further, "[n]either the prosecution nor a defendant is entitled to the particular language requested in a proposed jury instruction," and "[a] trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues present-

---

**3.** Marquez–Lerma did not appeal her convic-     tions in No. CR 03–57.

ed." *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir.1992) (internal quotation marks and citation omitted).

Instead of using Sequieros–Garcia's proffered instruction, the district court gave Ninth Circuit pattern instruction 4.9. The instruction given by the district court adequately covered Sequieros–Garcia's defense theory that Hector Fernandez was not credible. *See Mason*, 902 F.2d at 1438; *Powell*, 955 F.2d at 1210. Accordingly, the district court did not err.

### 5. Four-level Downward Adjustment Under U.S.S.G. § 3B1.2(a)

Marquez–Lerma and Zamudio–Gomez contend that the district court erred by not granting them a four-level downward adjustment to reflect their roles as minimal participants in the conspiracy, pursuant to U.S.S.G. § 3B1.2(a). The district court found that Marquez–Lerma and Zamudio–Gomez were aware of the activity in which they were involved and that they were paid according to the amount of controlled substances they transported. The district court also stated that the evidence at trial showed that Marquez–Lerma and Zamudio–Gomez made numerous trips, facilitated the transfer of large quantities of drugs (including cocaine and methamphetamine), and were "obviously" aware of the scope of the conspiracy.

■ Ordinarily, we review a district court's determination that a defendant does not qualify for minimal participant status for clear error. *See United States v. Johnson*, 297 F.3d 845, 874 (9th Cir. 2002). Here, however, we are reversing a number of the counts of which these two defendants were convicted for insufficiency of the evidence, vacating their sentences, and remanding for resentencing. We thus decline to address Defendants' contention that they are entitled to the minimal participant downward adjustment on this rec-

ord, because the district court will have a fresh opportunity to reassess the minimal participant issue at Defendants' resentencing on the record then before it.

### 6. *Booker* Error

■ Sequieros–Garcia argues that the sentence imposed by the district court was unreasonable under *Booker*. While Sequieros–Garcia does not articulate this argument well, it appears that he is actually challenging the district court's application of the sentencing guidelines. We review the district court's application of the guidelines to the facts of a particular case for an abuse of discretion. *See United States v. Miguel*, 368 F.3d 1150, 1155 (9th Cir.2004).

Sequieros–Garcia claims that "the jury appears to have duplicated the amounts of drugs when it found the amount alleged in the conspiracy and also found the same amount under substantive charges," yet he provides no citation to the record to support this claim. A review of the record indicates that the district court adopted the Pre-sentence Investigation Report's ("PSR") findings with regard to drug amounts and Sequieros–Garcia's base offense level. The drug amounts (base offense level calculations) in the PSR were properly drawn from the jury's verdicts. Applying U.S.S.G. § 2D1.1(c)(4), the district court correctly calculated that Sequieros–Garcia's base offense level was 32 and imposed a sentence that was within the guidelines range. Therefore, Sequieros–Garcia's claim that the drug quantities he was held responsible for were "duplicated" is meritless.

■ Finally, because there appears to be no material error in the district court's application of the guidelines, we next consider Sequieros–Garcia's challenge to the reasonableness of the overall sentence in light of all the 18 U.S.C. § 3553(a) factors,

including the applicable Guidelines range. *See United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir.2006) (explaining that this court must first determine whether the district court erred in its application of the sentencing Guidelines prior to reviewing overall sentence for reasonableness). Here, as in *United States v. Knows His Gun*, 438 F.3d 913 (9th Cir. 2006), the district court also imposed an identical alternative sentence in the event that the mandatory Guidelines were held to be unconstitutional. The record shows that the district court properly considered the sentencing factors contained in 18 U.S.C. § 3553(a) when arriving at both the guidelines and alternative sentence of 151 months. *See Knows His Gun*, 438 F.3d at 918 ("To comply with the requirements of *Booker*, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence."). Accordingly, we conclude that Sequieros–Garcia's sentence was not unreasonable.[4]

## CONCLUSION

The judgments of conviction are affirmed as to all defendants on all counts, except that, as to Marquez–Lerma, we reverse the convictions on Counts II, III, and IV of the indictment in No. CR 03–56, and as to Zamudio–Gomez, we reverse the convictions on Counts II, III, and IV of the indictment in No. CR 03–56, and Counts II, III, IV, V, and VIII of the indictment

in No. CR 03–57, all for insufficiency of the evidence. We also conclude that the evidence supports only 50 pounds of marijuana, and not 100 pounds, as charged in Count VIII of the indictment in No. 03–56.

The sentences of Marquez–Lerma and Zamudio–Gomez are vacated and their cases are remanded for resentencing in accordance with this disposition. The sentence of Sequieros–Garcia is affirmed.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

4. Zamudio–Gomez and Marquez–Lerma also contend that the district court committed non-constitutional *Booker* error in their respective sentences. Because, however, we reverse the convictions against these Defendants on a number of counts and vacate their sentences and remand for resentencing, it is unnecessary to reach their contentions regarding asserted *Booker* error.