**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee/*
*Cross-Appellant*,

v.

LLOYD NICKLE,
*Defendant-Appellant/*
*Cross-Appellee.*

Nos. 14-30204
14-30229

D.C. No.
2:13-cr-00023-
SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, Senior District Judge, Presiding

Argued and Submitted
October 15, 2015—Seattle, Washington

Filed March 21, 2016

Before: Alex Kozinski, William A. Fletcher
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Kozinski

# SUMMARY[*]

## Criminal Law

The panel vacated a jury conviction and sentence for conspiracy and possession of a controlled substance with intent to distribute, and, on the government's cross-appeal, vacated the district court's order that the defendant's forfeited assets be used to reimburse the court for payment to his appointment counsel.

The panel held that the defendant should not have received a trial and should instead have been permitted to plead guilty. The panel explained that the judge's stated reason for rejecting the defendant's guilty plea—that the defendant's limited admissions left no "clear record that warrants this Court in making the kind of decision that I think I am obligated to make"—was inapt. The panel observed that the defendant never suggested that the government did not have sufficient evidence for a jury to conclude that he is guilty, and that armed with the defendant's admission of guilt and the government's offer of proof, the district court had all it needed to fulfill its duty under Fed. R. Crim. P. 11(b)(3) to determine that there is a factual basis for the plea.

Because a new trial is possible, the panel reviewed the defendant's claims of error as to the trial to help guide the parties and the district court on remand. The panel held that the district court did not act within the area of permissible discretion in preventing the defendant from questioning three

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the government's cooperating witnesses about their plea-agreement terms providing that the government may move for a reduction of sentence pursuant to Fed. R. Crim. P. 35 to reward the witnesses for any substantial assistance. The panel explained that it is the fact that the government had not yet made a Rule 35 motion that would give the witnesses the greatest incentive to tailor their testimony to please the prosecution.

The panel vacated the district court's sua sponte order directing that the defendant's forfeited cash and proceeds from the sale of his forfeited property be used to pay past and future court-appointed counsel. Citing 18 U.S.C. § 3006A(f), the panel explained that once the district court ordered the defendant's assets forfeited, it was as if the government had title to them all along, and they were not available for payment from or on behalf of the defendant. The panel also held that the district court could not achieve this result by amending the original judgment under Fed. R. Crim. P. 35(a), where no error for which Rule 35(a) permits amendment occurred here.

To preserve the appearance of justice, the panel remanded to a different judge.

---

## COUNSEL

Palmer A. Hoovestal (argued), Hoovestal Law Firm, PLLC, Helena, Montana, for Defendant-Appellant/Cross-Appellee.

Michael S. Lahr, Assistant United States Attorney (argued), Office of the United States Attorney, Helena, Montana, Michael W. Cotter, United States Attorney, Zeno B. Baucus,

Assistant United States Attorney, Office of the United States Attorney, Billings, Montana, for Plaintiff-Appellee/Cross-Appellant.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether the district court abused its discretion by rejecting defendant's guilty plea or by preventing him from cross-examining cooperating witnesses regarding the scope of their plea agreements.

## FACTS

Lloyd Nickle faced two hefty charges involving at least 500 grams of a controlled substance. He agreed to plead guilty to one count involving the greatly reduced minimum of 50 grams; in exchange, the government agreed to dismiss the two more severe charges and make favorable sentencing recommendations.

The district judge, however, refused to accept the plea. During the plea colloquy, the following exchange took place:

> THE COURT: [I]f I'm going to consider accepting a plea from you to admit to this charge, you are going to have to tell me what happened. That is, you are going to have to tell me what you did, and what your part in this undertaking was, and why that activity, whatever it may have been, would bring you here to court today to admit to having violated

the law in whatever way the government has charged.  If you intend to make a statement on it, this is the time to do it.

THE DEFENDANT:  Well, I admit I was in conspiracy with other people to, uhm—with 50 grams or more of meth, to have bought it.

THE COURT:  Where did this take place, Mr. Nickle?

THE DEFENDANT:  In Montana.

The district judge pressed Nickle for more details about his involvement in the crime, stating that defendant had to "admit enough information for [the judge] to make a reasonable decision about [his] drug activity."  The district judge made clear that he would reject the plea unless Nickle gave more detailed answers.  But Nickle added only that "the conspiracies were other than Montana, in other states."  The district judge ended the hearing, refusing to "accept a plea from this man under these circumstances."

At trial, the government called three cooperating witnesses who claimed to have participated in the meth conspiracy with Nickle.  All had already pleaded guilty and been sentenced, but each of their plea agreements contained the following language:  "Under appropriate circumstances, the United States may move, but has not made any commitment as part of this agreement to move, for a reduction of sentence pursuant to Rule 35, *Federal Rules of Criminal Procedure*, to reward the Defendant for any substantial assistance the Defendant provides after sentencing."  Defense counsel wanted to cross-examine the

witnesses regarding the scope of their deals with the government but the district judge would have none of it.

The jury found Nickle guilty of conspiracy and possession with intent to distribute, and the court sentenced him to 30 years in prison. After Nickle filed his notice of appeal, the district court ordered that his forfeited assets be used to reimburse the court for payment to Nickle's appointed counsel. Nickle appeals his conviction and sentence; the government appeals the reimbursement order.

## DISCUSSION

### *The Plea Hearing*

A district court must accept an unconditional guilty plea so long as it meets the requirements of Federal Rule of Criminal Procedure 11(b). *In re Vasquez-Ramirez*, 443 F.3d 692, 695–96 (9th Cir. 2006). To comply with Rule 11(b), the court must determine that the plea is knowing, voluntary and intelligent, and has a factual basis. *See* Fed. R. Crim. P. 11(b); *see also Vasquez-Ramirez*, 443 F.3d at 695 & n.4. The factual-basis requirement "ensure[s] that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged." *United States* v. *Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009) (as amended). A district court's discretion in this area is limited. It can only reject a plea for lack of a factual basis if the defendant "denie[s] committing a specific element of the offense or protest[s] his innocence even after demonstrating that he underst[ands] the charge." *Id.* at 685.

Nickle never denied committing an element of the offense, nor did he protest his innocence. If the judge had

doubts about whether Nickle understood the charge or was disputing guilt, that would have been a proper basis for rejecting the plea. But the judge would then have been required to disclose those as his reasons. *See id.*

The judge's stated reason for rejecting the plea—that Nickle's limited admissions left no "clear record that warrants this Court in making the kind of decision that I think I am obliged to make"—was inapt. There is no requirement in Rule 11(b) that the defendant himself give an in-depth account of his crime or confirm that everything in the government's offer of proof is true. Although Nickle claimed "some of the things that the witnesses say [in the government's offer of proof] are untrue," he never suggested that the government did not have "sufficient evidence for a jury to conclude that he is guilty." *United States* v. *Webb*, 433 F.2d 400, 403 (1st Cir. 1970). Armed with the defendant's admission of guilt and the government's offer of proof, the district court had all it needed to fulfill its duty under Rule 11(b)(3), which is to "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3); *see United States* v. *Alvarado-Arriola*, 742 F.2d 1143, 1144 (9th Cir. 1984). Once the court identifies facts supporting the plea, it must accept a tendered guilty plea that otherwise satisfies Rule 11(b). *Vasquez-Ramirez*, 443 F.3d at 695–96, 700. Nickle "should not have received a trial at all and instead been permitted to plead guilty." *United States* v. *Rea-Beltran*, 457 F.3d 695, 703 (7th Cir. 2006).[1]

---

[1] The district judge gave Nickle a second opportunity to plead guilty, but gave no indication he would reconsider the terms on which he would accept the plea. Nickle thus cannot be faulted for failing to take this opportunity, as the government argues.

The district court's error made Nickle significantly worse off:   He was convicted of two offenses that carried substantially higher maximum sentences than the single offense to which he was ready to plead guilty.[2]   Under these circumstances, "the verdict resulting from the jury trial cannot stand."  *Id.*  We therefore vacate Nickle's convictions and remand so that he may plead guilty pursuant to the terms of his original plea agreement.  *See id.*

### Trial Errors

Although the district court must give Nickle the opportunity to plead guilty under the terms of his original plea agreement, that doesn't mean he is required to so plead. Nickle could choose to hold out for a better deal or to go to trial anew.[3]   Because a new trial is possible, we review

---

[2] Nickle would have pleaded guilty to participating in a conspiracy involving at least 50 grams, which carried a statutory sentencing range of 5 to 40 years. 21 U.S.C. § 841(b)(1)(B)(viii); *see id.* § 846.  The jury convicted him of two counts (possession and conspiracy) and found that each offense involved at least 500 grams.  The statutory sentencing range for that amount is 10 years to life.  *Id.* § 841(b)(1)(A)(viii).

[3] We have found authority suggesting that a defendant in Nickle's circumstances should not have the option of a new trial.  Rather, he should be forced to choose between accepting the original plea offer or accepting the result of the trial where he was properly convicted.  In *United States* v. *Maddox*, which also involved the erroneous rejection of a guilty plea, the D.C. Circuit ordered the district court to vacate the jury verdicts "[u]pon satisfactory completion of plea proceedings." 48 F.3d 555, 561 (D.C. Cir. 1995); *see also Lafler* v. *Cooper*, 132 S. Ct. 1376, 1389 (2013) (noting that the proper remedy when ineffective assistance of counsel leads a defendant to reject a plea offer "may be to require the prosecution to reoffer the plea proposal," after which the judge may "accept the plea or leave the conviction undisturbed").  And *Mancinas-Flores*, though more vague about the precise remedy it was ordering, noted that it was

Nickle's claims of error as to the first trial to help guide the parties and the district court on remand.

Nickle argues that the district court violated his confrontation right by preventing him from questioning three of the government's cooperating witnesses about the Rule 35 terms of their plea agreements. When Nickle's counsel tried to do so with the first of these witnesses, the district judge *sua sponte* interjected, "[W]e're not going to get into introduction of the plea agreement in this proceeding . . . . There's no Rule 35 that's been filed." Addressing the jury, he added that Rule 35 was "irrelevant to the issues in this case at this time." The second witness denied knowing what a Rule 35 motion was and claimed she wasn't sure what her plea agreement said. And when defense counsel tried to question the third witness about his plea agreement, the district judge again intervened: "We're not going to go into the content of the plea agreement in this trial. There is no Rule 35 motion before the Court."

The Confrontation Clause guarantees criminal defendants the right to cross-examine government witnesses regarding their "biases and motivations to lie." *United States* v. *Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) (en banc); *see also Davis* v. *Alaska*, 415 U.S. 308, 318 (1974). But "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986). When,

---

following the procedure utilized in *Maddox*. *Mancinas-Flores*, 588 F.3d at 686. But Nickle asked us to "reverse [his] conviction and remand so as to place Nickle in the position that he was in prior to the termination of the change of plea proceedings." The government did not contest Nickle's proposed remedy and has therefore waived the argument. For this reason, we leave to another day the question of the proper remedy for a court's erroneous rejection of a plea.

as here, a trial judge allows some inquiry into "the biases and motivations to lie of the Government's cooperating witnesses" but limits the scope of that inquiry, we review the defendant's claims for abuse of discretion. *Larson*, 495 F.3d at 1102. We consider three questions: (1) whether the district court excluded relevant evidence; (2) whether "there were other legitimate interests outweighing the defendant's interest in presenting the evidence"; and (3) whether the jury had "sufficient information to assess the credibility of [each] witness." *Id.* at 1102–03.

As the government concedes, the excluded testimony was unquestionably relevant.[4] Rule 35 provides that "[u]pon the government's motion . . . the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). Each plea agreement roughly tracked the language of Rule 35, but also suggested the government might move for a Rule 35 reduction "[u]nder appropriate circumstances" and characterized Rule 35 motions as "reward[s]" for cooperation. As this language suggests an exchange between the witnesses and the government, Nickle had a right to ask whether any of the witnesses had a particular understanding of the terms of such an exchange.

---

[4] While *Larson* instructs us to "review the limitation on the cross-examination of each witness separately," 495 F.3d at 1103, the limitation here was the same as to all three witnesses: The district court precluded defense counsel from questioning them in detail about the Rule 35 provisions in their plea agreements. Accordingly, the answers to the first two questions are the same for each witness.

Our law is clear: "Where a plea agreement allows for some benefit or detriment to flow to a witness as a result of his testimony, the defendant must be permitted to cross examine the witness sufficiently to make clear to the jury what benefit or detriment will flow, and what will trigger the benefit or detriment." *United States* v. *Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) (as amended). The district court had it precisely backwards: It is the fact that the government had not yet made a Rule 35 motion that would give the witnesses the greatest incentive to tailor their testimony to please the prosecution.

In *Schoneberg*, we held that the district court abused its discretion by preventing the defendant from cross-examining the government's key witness regarding the Rule 35 term of his plea agreement. *Id.* at 1042–43. As in *Schoneberg*, the witnesses here may have been hoping to "trigger" a benefit—specifically, the "reward" of a Rule 35 motion by the government. Because it was entirely up to the government to determine, after the witnesses testified, whether they had earned that benefit by providing "substantial assistance," they had a strong incentive to testify in a way that would please the government. *See id.* at 1043. The witnesses could reasonably believe that the more incriminating their testimony against Nickle, the more likely it would be that they would be rewarded with a Rule 35 motion. *See Larson*, 495 F.3d at 1107 & n.14. Certainly, a juror might believe that the lure of that reward would color the witnesses' testimony.

Nor did the district judge articulate a reason that could have outweighed Nickle's interest in cross-examining the witnesses about their plea deals, such as precluding "repetitive and unduly harassing interrogation." *Schoneberg*,

396 F.3d at 1042. Instead, the district judge determined that the witnesses "had no promise of a Rule 35, and no expectation of such, and there is no justification in this record for attempting to go into a legal matter that is . . . dependent upon a motion that has not been filed, and . . . dependent upon action of this Court." But, as explained above, it is precisely the *hope* that the government will file a Rule 35 motion that may motivate a witness to tailor his testimony to serve the government's purposes. Indeed, the incentive is far stronger when the government has not filed a Rule 35 motion than if it has.

In *Larson*, the same district judge who presided over Nickle's case had prevented defense counsel from asking cooperating witnesses what mandatory minimums they faced absent their testimony against the defendants. 495 F.3d at 1096, 1102–04. He reasoned that "all matters related to sentencing are the decision of the court and the court only." *Id.* at 1104. We explained that this statement was inaccurate because the government had the discretion to move to reduce the witnesses' sentences if it was pleased with their testimony. *Id.* at 1104–05. "[T]he fact that [the witnesses] had not yet been sentenced" was "of no consequence" because their sentences were subject to "the Government's evaluation of the quality and significance of [their] testimony at . . . trial and its subsequent recommendation . . . regarding a sentence reduction." *Id.* at 1107 n.14. Undaunted by *Larson*, the district judge this time didn't merely shut down defense counsel's valid efforts to vindicate his client's right to confrontation, he threatened sanctions: "Your effort to inject this issue into the case is . . . entirely inappropriate, borders on being reprehensible, and I am cautioning you not to repeat it in this courtroom again." It was the district judge, not defense counsel, who was out of line in making such a

heavy-handed threat against an advocate seeking to serve his client zealously and ethically.

The limitations on cross-examination did not leave the jury "with sufficient information to assess the credibility of [each] witness." *Id.* at 1103. The first witness testified as to his crude understanding of Rule 35 ("People get a reduction in their sentence for testifying") and admitted that, while the government had made no promises, he "hope[d] that anything," including a Rule 35 motion, would reduce his sentence. This witness also mentioned that he "would like to get out sometime before" his two young children were "grown and old." *Cf. Larson*, 495 F.3d at 1109–10 (Graber, J., concurring in part and specially concurring in part) (noting that a jury's awareness that an incarcerated witness has children helps it assess that witness's credibility). Left alone, this may have been sufficient impeachment. But the district judge's "emphatic admonition[]," *Schoneberg*, 396 F.3d at 1043, that Rule 35 was "irrelevant to the issues in this case" fatally undermined the inference defense counsel was seeking to present.

The second witness testified on direct that she wasn't promised a sentence reduction. She added on cross that she hadn't heard of Rule 35, that she wasn't sure what her plea agreement said and that she was only testifying "to tell the truth about what happened." Had defense counsel had the opportunity to cross-examine her regarding the Rule 35 term in her plea agreement, he could have shown that she stood to benefit by testifying against Nickle and he might have led the jury to question her claims that she knew nothing about a key

term in a document she had signed.[5]  As with the first witness, the jury was left with insufficient information with which to assess the second's credibility.

The third witness testified on cross that his plea agreement contained a Rule 35 provision "just stating what the rule was" and added that he had no expectation or hope of Rule 35 treatment.  In fact, his plea agreement—like that of the other two—did more than just state the rule; it added that "[u]nder appropriate circumstances," the government might make a Rule 35 motion as a "reward" for cooperation. Defense counsel should have been allowed to chip away at this witness's credibility by exposing an inconsistency between what he testified about his plea agreement and what it actually said.  Instead, the jury only heard this witness testify that he wasn't even hoping to receive Rule 35 treatment and that "[t]he only thing I was told is if I lied today, I'd get five more years on my sentence."  Those statements, combined with the judge's earlier comment in the presence of the jury that Rule 35 was irrelevant and the reminder that there was "no Rule 35 motion before the Court," disabled defense counsel from effectively calling this witness's credibility into question.

The district judge's rulings were not "within the area of permissible discretion" with respect to any of the above witnesses. *Schoneberg*, 396 F.3d at 1043.  In the typical case,

---

[5] Although defense counsel did not press the second witness on Rule 35 or seek to refresh her recollection with her plea agreement, the district judge had already forcefully rejected counsel's efforts to do the same with the first witness.  "[I]n light of the district court's clear ruling," Nickle did not forfeit his Confrontation Clause claim with respect to the second witness. *Larson*, 495 F.3d at 1104 n.8.

we would next ask whether the jury verdict could nevertheless stand because the trial errors were harmless beyond a reasonable doubt. *See Larson*, 495 F.3d at 1107. That would be a close call here, as the witnesses all gave highly incriminating testimony that tied Nickle to various drug deals. But, because we vacate Nickle's conviction on other grounds, we need not conduct a harmlessness analysis.[6]

### The Government's Cross-Appeal

The original judgment ordered Nickle to forfeit cash and property that the government had seized from him. After Nickle moved the court to appoint counsel on appeal, the district judge issued a *sua sponte* order directing that Nickle's forfeited cash and proceeds from the sale of Nickle's forfeited property "be held and disbursed as appropriate in reimbursement of" the costs of Nickle's past and future court-appointed representation. We address the government's challenge to this order in case the issue arises again on remand. *See United States* v. *Mancuso*, 718 F.3d 780, 796 (9th Cir. 2013).

The Criminal Justice Act (CJA) requires the government to provide funds for the representation of indigent federal criminal defendants. 18 U.S.C. § 3006A(a), (i). Whenever a district court "finds that funds are available for payment from or on behalf of a person furnished representation, it may

---

[6] Nickle appeals his sentence, but that sentence may well be significantly different on remand. Thus, although we have in the past addressed a defendant's claims of sentencing error despite vacating his conviction "in case the same issues arise on remand," *United States* v. *Mancuso*, 718 F.3d 780, 796 (9th Cir. 2013), we decline to do so here. *See Mancinas-Flores*, 588 F.3d at 679.

authorize or direct that such funds be paid . . . as a reimbursement" for CJA-related spending. *Id.* § 3006A(f). The question is whether the forfeited assets were "available . . . from or on behalf of" Nickle, the person furnished representation.

A defendant must forfeit, upon conviction, all property constituting or derived from the proceeds of federal drug crimes. 21 U.S.C. § 853(a); *see also United States* v. *Monsanto*, 491 U.S. 600, 607–08, 612 (1989). Moreover, "[a]ll right, title, and interest in [forfeited] property . . . vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *see also Caplin & Drysdale, Chartered* v. *United States*, 491 U.S. 617, 627 (1989) (explaining that "§ 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture"). Thus, once the district court ordered Nickle's assets forfeited, it was as if the government had title to them all along. Because the assets belonged to the government, they were not "available for payment from or on behalf of" Nickle. 18 U.S.C. § 3006A(f).

Additionally, federal law requires that "all amounts from the forfeiture of property under any law enforced or administered by the Department of Justice" be deposited, 28 U.S.C. § 524(c)(4)(A), in a special fund used for various law enforcement purposes, *see id.* § 524(c)(1). That fund is entirely separate from the money "appropriated to the United States courts . . . to carry out the provisions of" the CJA. 18 U.S.C. § 3006A(i). The district court had no authority to redirect money earmarked for the Justice Department's fund.

Nor could the district judge achieve such a result by amending the original judgment under Federal Rule of Criminal Procedure 35(a), as he attempted to do at the same time he filed the *sua sponte* order.  The amended judgment added a note that "[t]he defendant shall pay . . . [a]ll previously expended and future fees and costs of CJA representation from forfeited assets."  Rule 35(a) provides that, "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  Because no such error occurred here, the district court could not amend the judgment to correct it.  *See United States* v. *Bennett*, 423 F.3d 271, 277 (3d Cir. 2005); *see also United States* v. *Ceballos*, 671 F.3d 852, 854 (9th Cir. 2011) (per curiam).

### *Reassignment*

On remand, the court may have to re-sentence Nickle, whether following a guilty plea or retrial.  The judge who presided over Nickle's first trial has seen a jury convict him of two offenses that are not part of the plea agreement.  More critically, in determining Nickle's original sentence, the district judge relied in part on the testimony of witnesses whom he prevented Nickle from effectively cross-examining. We find it unlikely that the district judge would be able to put out of his mind his already-developed notions about what Nickle's punishment should be.  Therefore, "to preserve the appearance of justice," we remand to a different judge.  *See United States* v. *Hernandez-Meza*, 720 F.3d 760, 769–70 (9th Cir. 2013); *see also United States* v. *Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012).

**VACATED** and **REMANDED**.