# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

BERNARDO MANCINAS-FLORES, AKA
Arturo Morales-Garcia, AKA
Bernardo Mancias-Flores,
            *Defendant-Appellant.*

No. 08-10094

D.C. No.
CR-05-01086-ROS

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted October 5, 2009
San Francisco, California

Filed December 2, 2009
Amended December 30, 2009

Before: Pamela Ann Rymer and A. Wallace Tashima,
Circuit Judges, and Lynn S. Adelman,* District Judge.

Opinion by Judge Adelman;
Partial Concurrence and Partial Dissent by Judge Rymer

---

*The Honorable Lynn S. Adelman, United States District Judge for the
Eastern District of Wisconsin, sitting by designation.

16783

## COUNSEL

Daniel Kaplan, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Lisa Jennis Settel, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

## ORDER

The opinion filed on December 2, 2009, is amended as follows:

Slip op. p. 15725, Section II, ¶ 1, line 5. Delete "(en banc)".

Slip op. p. 15728, ¶ 2, line 6. Delete the parenthetical ", sitting en banc,".

## OPINION

ADELMAN, District Judge:

A Phoenix grand jury indicted defendant Bernardo Mancinas-Flores for a variety of offenses arising out of defen-

dant's involvement in smuggling undocumented aliens into the United States and holding them for ransom in a stash house. On the morning the trial was to begin, defendant decided to enter into a plea agreement with the government pursuant to which he would plead guilty to a firearm charge. Defendant attempted to plead guilty, but the district court rejected his plea and ordered the case to proceed to trial, whereupon the jury found defendant guilty on all counts, and the court sentenced him to life in prison.

On appeal, defendant challenges the district court's denial of his motion to suppress evidence obtained pursuant to a warrantless search of the stash house, its rejection of his guilty plea, its decision admitting evidence of a sexual assault and its sentence. We affirm the district court's denial of the motion to suppress. However, we vacate the court's rejection of defendant's guilty plea and remand for a new plea hearing. Because we remand for a new plea hearing, we do not address the district court's decision to admit evidence of a sexual assault or its sentence.

I.

On October 6, 2005, Immigration and Customs Enforcement ("ICE") agents in Phoenix learned that a Michigan resident had reported that smugglers were holding a relative of the Michigan resident hostage in Phoenix pending payment of a ransom. On October 7, 2005, Phoenix ICE learned that a Kansas resident had called ICE agents in Kansas City and reported that smugglers were holding his relative hostage in Phoenix. The Kansas City resident knew the smugglers' phone number, and ICE commenced an investigation, working with the telephone service provider to locate the phone that the smugglers were using to make their demands. ICE also coordinated and recorded additional calls between the Kansas City resident and the smugglers, and during such calls, the Kansas City resident persuaded the smugglers to give him until October 10, 2005 to pay the ransom.

On October 10, 2005, at approximately 11:00 a.m., ICE identified a residence in Phoenix where the smugglers were holding the undocumented aliens. ICE then contacted the Phoenix Police Department's Special Assignments Unit ("SAU") and requested that officers enter the residence and rescue the hostages. When ICE initially discussed the situation with SAU, SAU determined that exigent circumstances justifying a warrantless entry into the residence were not present. ICE and SAU discussed the possibility of a "knock and talk" operation, in which officers would knock on the door of the stash house and request permission to enter it. However, between 11:30 a.m. and 11:45 a.m., an ICE agent reported that the Michigan resident had just called again and stated that during the October 6 call, the smugglers had threatened to rape and beat his female relative unless he paid the ransom immediately. Based upon this information, SAU decided that exigent circumstances existed and, at about 12:15 p.m., executed a warrantless entry into the stash house, discovering seventeen undocumented aliens and a loaded shot gun. The hostages identified defendant and Andres Vazquez-Vera as the smugglers.

The government initially charged defendant and Vazquez-Vera with conspiracy to commit hostage taking, hostage taking, conspiracy to harbor illegal aliens and harboring illegal aliens. In a superceding indictment, it added a fifth count, possession or use of a firearm in a crime of violence, in violation of 18 U.S.C. § 924(c). Vazquez-Vera eventually pleaded guilty.

Defendant moved to suppress the evidence obtained from the entry into the stash house, and the district court denied the motion, holding that defendant had no legitimate expectation of privacy in the stash house and that even if he had, exigent circumstances justified the search. The court also denied defendant's motion to bar the admission of evidence that he had sexually assaulted a female alien.

On the morning of trial, the parties informed the court that defendant had decided to plead guilty to the firearm count in exchange for the government's dismissing the remaining counts and agreeing to a sentencing range of twenty to thirty years. The court replied that it would reject any plea agreement that limited the sentence to thirty years, but that it would entertain a plea agreement calling for a higher sentence. The parties then reached a new plea agreement, under which defendant would plead guilty to the firearm charge in exchange for dismissal of the remaining counts and a sentencing range of twenty-five to forty years.

The court then engaged in a colloquy with defendant, which culminated in the following exchange:

THE COURT: Do you understand what's happening now today?

THE DEFENDANT: I do understand.

THE COURT: What's happening?

THE DEFENDANT: I am accepting a charge, a crime.

THE COURT: Have you talked to your attorney about it?

THE DEFENDANT: Yes, we have talked.

THE COURT: And did she assist you in understanding what the agreement was?

THE DEFENDANT: Yes, she communicated to me the things.

THE COURT: And have you decided, then, to plead guilty?

THE DEFENDANT: Yes, I have decided to plead guilty because I was told otherwise I could get life in prison and I do have a family and children.

THE COURT: Are you pleading guilty because you are guilty?

THE DEFENDANT: Well, those are the charges they have filed against me. I have never been shown evidence of fingerprints on the weapons or things like that.

THE COURT: Are you pleading guilty because you are guilty?

THE DEFENDANT: Well, I'm really not guilty.

THE COURT: All right. Let's bring the jury up. All right.

The court immediately commenced the trial, and the jury found the defendant guilty on all five counts. The court sentenced him to life imprisonment on the hostage taking counts, 120 months on the harboring counts, and eighty-four months on the firearm count, all concurrent, except for the firearm sentence, which was consecutive.

## II.

Defendant argues that the district court erred in its handling of his guilty plea. He contends that the plea met all the requirements of Fed. R. Crim. P. 11(b), and that therefore the court had no discretion to reject it. *See In re Vasquez-Ramirez*, 443 F.3d 692, 695-96 (9th Cir. 2006) (holding that a district court is required to accept a guilty plea that satisfies the requirements of Fed. R. Crim. P. 11(b)). Alternatively, defendant argues that even if the court had discretion to reject his plea, it did not adequately explain its reasons for doing so

and thus failed to actually exercise discretion. Because the district court abruptly cut off the plea colloquy, we cannot conclude that the plea satisfied all of Rule 11(b)'s requirements. As discussed below, however, we agree with defendant's alternative argument and therefore vacate the district court's rejection of defendant's guilty plea and remand for a new plea hearing.

### A.

**[1]** We begin the analysis by reviewing some of the general principles applicable to plea proceedings under the Federal Rules of Criminal Procedure. A defendant may plead not guilty, guilty or, with the court's consent, nolo contendere. Fed. R. Crim. P. 11(a). A plea of not guilty puts all material elements of the crime in play, even the most obvious facts. 1A Charles Alan Wright, *Federal Practice & Procedure* § 173 (3d ed. 1999). In contrast, a guilty plea is an admission of all the elements of a formal criminal charge. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). A plea of nolo contendere is "viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." *North Carolina v. Alford*, 400 U.S. 25, 36 n.8 (1970).

**[2]** Although unmentioned in Rule 11, courts and lawyers sometimes refer to an "*Alford* plea." An *Alford* plea is a plea of guilty in which the defendant maintains his innocence. *See generally Alford*, 400 U.S. at 36. *See also United States v. Crowell*, 374 F.3d 790, 791 (9th Cir. 2004). An *Alford* plea differs from a nolo plea in that a defendant pleading nolo contendere takes no position on guilt or innocence, whereas a defendant entering an *Alford* plea takes the position that he is not guilty. It bears repeating that, as far as the text of Rule 11 is concerned, there is no such thing as an *Alford* plea. An *Alford* plea is simply shorthand for a guilty plea accompanied by a protestation of innocence. Thus, when a defendant offers what courts and lawyers describe as an *Alford* plea, the defen-

dant is actually offering, in Rule 11 terms, a guilty plea. *See United States v. Tunning*, 69 F.3d 107, 110-11 (6th Cir. 1995) (discussing difference between *Alford* and nolo pleas and noting that an *Alford* plea is a guilty plea within the meaning of Rule 11, not a nolo plea).

Rule 11 imposes a number of requirements on a district court confronted with a guilty or nolo plea. Rule 11(b)(1) requires the court to place the defendant under oath and inform him of and determine that he understands both his rights and the consequences of his plea. Rule 11(b)(2) requires the court to ensure that the plea is voluntary — that is, that it did not result from force, threats or promises other than those in the plea agreement.

**[3]** If the defendant offers a guilty plea (whether an *Alford* plea or other), Rule 11(b)(3) requires the court to determine that the plea has a factual basis. The purpose of this requirement is to ensure that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged. *McCarthy*, 394 U.S. at 466-67. Put differently, the factual basis requirement is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Fed. R. Crim. P. 11 advisory committee's note (1966). *See also United States v. Mastrapa*, 509 F.3d 652, 658-60 (4th Cir. 2007) (stating that the factual basis requirement guards against possible discrepancy between the defendant's acknowledgment of guilt and his or her understanding of what the crime entailed). The factual basis requirement does not apply to nolo pleas. *See* Fed. R. Crim. P. 11(b)(3). This is so because a defendant pleading nolo contendere takes no position on whether he committed the elements of the offense, and the court therefore has no reason to examine whether, in fact, he did. *See* Fed. R. Crim. P. 11 advisory committee's note (1966) ("For a variety of reasons it is desirable in some cases to permit entry of judgment upon a plea

of nolo contendere without inquiry into the factual basis for the plea.").

**[4]** Rule 11(b)(3) does not specify the exact nature of the inquiry that a district court must make when determining whether a guilty plea has a factual basis. However, the Advisory Committee notes to the 1974 amendments suggest that "[a]n inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case." Thus, a court need not rely on the plea colloquy alone and "may conclude that a factual basis exists from anything that appears on the record." *Mastrapa*, 509 F.3d at 660 (internal quotation marks omitted). Further, as indicated in *Alford*, a court can find a factual basis for a plea even if the defendant insists that he is innocent. 400 U.S. at 37; *United States v. Neel*, 547 F.2d 95, 96 (9th Cir. 1976). In such circumstances, the court must look to other evidence in the record to determine whether the plea has a factual basis. *See Maxwell*, 368 F.2d 735, 739 n.3 (9th Cir. 1966) (noting that trial court could have found factual basis for plea even though defendant could not personally vouch for his guilt).

Before accepting a plea of nolo contendere, a court must consider the parties' views and the public interest in the effective administration of justice. Fed. R. Crim. P. 11(a)(3). Although not precisely specified by the Rule, the reason for considering these factors is that nolo pleas come with various costs and benefits, and the court must ensure that in the case before it the benefits outweigh the costs. *See* Fed. R. Crim. P. 11 advisory committee's note (1974); *United States v. Am. Bakeries Co.*, 284 F. Supp. 864, 868-69 & n.1 (W.D. Mich. 1968) (discussing pros and cons of nolo pleas). In determining whether to accept a nolo plea, a district court has broad discretion and may reject the nolo plea if it determines that accepting the plea is not in the public interest. *See Maxwell*, 368 F.2d at 738.

Finally, we note that a district court may also have discretion to reject an *Alford* plea — even if the plea satisfies the Rule 11(b) requirements. *See United States v. O'Brien*, 601 F.2d 1067, 1069 (9th Cir. 1979). However, our decision in *Vasquez-Ramirez* casts doubt on this proposition. In *Vasquez-Ramirez*, this court held that a district court has no discretion to reject a guilty plea that meets the requirements of Rule 11(b). As discussed, Rule 11(b) does not require a defendant to admit guilt. Thus, *Vasquez-Ramirez* suggests that a district court has no discretion to reject a guilty plea from a defendant who maintains his innocence so long as the plea otherwise meets the Rule 11(b) requirements. However, *Vasquez-Ramirez* also acknowledged *O'Brien*'s statement that a court has discretion to reject an *Alford* plea and did not expressly overrule *O'Brien*. 443 F.3d at 700. In the present case, we need not resolve the tension between *O'Brien* and *Vasquez-Ramirez* because, as explained below, it is not clear that the district court rejected defendant's plea because it was an *Alford* plea.

### B.

In the present case, defendant pleaded guilty, and when the court questioned him, he stated that he had decided to plead guilty because he had been advised that otherwise he faced the possibility of a life sentence. The court then asked him whether he was "pleading guilty because he was guilty," and he responded as follows: "Well, those are the charges they have filed against me. I have asked for evidence but, for example, I have never been shown evidence of fingerprints on the weapons or things like that." The court then repeated its earlier question: "Are you pleading guilty because you are guilty?," and when defendant responded, "Well, I'm really not guilty," the court ended the colloquy and called for the jury. The court did not state a reason for rejecting defendant's plea.

**[5]** The court's failure to state a reason for rejecting the plea is problematic. As explained in the discussion above, a

court may reject a guilty plea for a number of different reasons, and usually we would review its decision to reject the plea for one of those reasons for abuse of discretion. However, without knowing the basis for the decision to reject the plea in the first place, we cannot review for abuse of discretion. Abuse-of-discretion review is not meaningful where a court fails to give reasons for its decision and its reasons are not apparent from the record. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996); *Rarogal v. INS*, 42 F.3d 570, 572 (9th Cir. 1994) (discretionary decision must show proper consideration of all factors); *Ins. Co. of N. Am. v. Moore*, 783 F.2d 1326, 1328 (9th Cir. 1986) ("Unless it is clear from the record that the district court's exercise of discretion was based on consideration of the relevant factors, we cannot review the decision for abuse of discretion without benefit of the lower court's reason for deciding as it did." (Internal quotation marks and citations omitted)).

**[6]** In the present case, the district court did not give a reason for rejecting defendant's plea and its reasons are not apparent from the record. The record tells us only that the court acted after defendant said that he was really not guilty. But this tells us nothing about the court's reasoning. Indeed, we can think of at least four reasons for the court's action that are consistent with this record: (1) the court mistakenly thought it could not accept a guilty plea from a defendant who maintained his innocence; (2) the court thought that the plea lacked a factual basis and thus had to be rejected under Fed. R. Crim. P. 11(b)(3); (3) the court considered defendant's plea an *Alford* plea and exercised its discretion to reject it; and (4) the court considered the plea a nolo plea and exercised its discretion to reject it under Rule 11(a)(3). Some of these reasons might constitute a satisfactory basis for rejecting defendant's plea, but others would not. The record sheds no light on which of these possibilities, if any, was the court's actual reason for rejecting the plea, and therefore we cannot determine whether the court abused its discretion.

**[7]** This is not a case in which we may affirm so long as any ground for affirming appears in the record. So although it is possible that the district court properly exercised its discretion, such possibility does not enable us to affirm. When a district court makes a discretionary decision, we will affirm so long as the decision is within the range of permissible decisions that the court could have made given the law and the facts confronting it. But before we can be sure that the district court's choice falls within that range, we need to be certain that the district court applied the proper law, considered all the relevant factors, and actually exercised its discretion. *See United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("[W]henever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise."). In short, when we review for abuse of discretion, we necessarily review the district court's decision-making process, not simply whether the decision resulted in a permissible outcome.[1]

The dissent characterizes defendant's plea as a hybrid of an *Alford* and a nolo plea. Diss. Op. at 16806 n.2 & 16808 n.5. Relying on *United States v. Buonocore*, 416 F.3d 1124, 1129-31 (10th Cir. 2005), the dissent then argues that a judge may

---

[1]Although, as the dissent points out, Diss. Op. at 16810, in some circumstances an appellate court will presume that a trial judge correctly applied the relevant law, it cannot do so where, as here, the judge fails to give any reason for a discretionary decision. To the contrary, we have held that "[u]nless it is clear from the record that the district court's exercise of discretion was based on consideration of the relevant factors, we cannot review the decision for abuse of discretion without benefit of the lower court's reason for deciding as it did." *Ins. Co. of N. Am.*, 783 F.2d at 1328 (internal quotation marks and citation omitted). Of course, a judge need not "tick off" all applicable legal principles and show that it understood and considered them, *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc), but this does not mean that we will simply presume, in the absence of reasons, that the judge did not abuse her discretion.

adopt a policy of never accepting *Alford* or nolo pleas and thus may reject either type of plea (or a hybrid) without stating any reason. But even assuming that a judge may adopt a policy of refusing to accept all *Alford* or nolo pleas regardless of the facts and circumstances of the case before her,[2] the judge must at least *disclose* that she has such a policy and that she is rejecting the defendant's plea pursuant to that policy. Otherwise, we are left to guess at the district court's reason for rejecting the plea, and we cannot know whether the district court applied the correct law or considered all the relevant factors. Indeed, in *Buonocore*, the district judge stated that she had a policy against accepting *Alford* and nolo pleas, that the law did not require that she accept such pleas, and that she saw no reason to depart from her policy with respect to the defendant's plea. 416 F.3d at 1127.[3] This statement of reasons revealed that the district judge at least applied the proper law and exercised her discretion in concluding that *Alford* and nolo pleas are generally not in the public interest. Thus, *Buonocore* does not support the proposition that a district judge need not give a reason when it rejects a guilty plea.

[8] The government suggests that the district court rejected defendant's plea because defendant's statement that he was really not guilty indicated that the plea was involuntary or lacked a factual basis. The dissent also asserts that defendant's statement caused the plea to lack a factual basis. Diss. Op. at 16805. However, by itself, defendant's statement does not suggest either that the plea was involuntary or that it

---

[2]We stress that we do not decide that a district court in the Ninth Circuit may adopt such a policy. Further, we reiterate that after *Vasquez-Ramirez*, a district court may lack discretion to reject *Alford* pleas that satisfy the requirements of Rule 11(b).

[3]Specifically, the court stated: "I do not accept Alfred [sic] pleas. That's what I told you at the beginning. I don't accept them. I don't accept Alfreds [sic]. I don't accept nolos. I cannot do this. You must admit intent. I simply do not, nor will I. And I know the Supreme Court allows me to do it. It's disfavored, and I see no reason in this case to do that." *Buonocore*, 416 F.3d at 1127 (internal quotation marks omitted).

lacked a factual basis. Even if he believed himself not to be guilty, defendant may have realized that he would likely be convicted and that it was in his best interest to plead guilty. If so, the plea would not have resulted from force, threats or promises outside of the plea agreement, and defendant's statement that he was really not guilty would not have indicated involuntariness.

**[9]** With respect to whether defendant's statement indicated the absence of a factual basis, during the plea colloquy the district court did not discuss the elements of the firearm charge with defendant and did not ensure that defendant understood how his conduct related to the elements of the offense. And as explained above, the factual basis requirement is meant to ensure that a defendant does not plead guilty based on a misunderstanding of his conduct in relation to the elements of the crime charged. *See McCarthy*, 394 U.S. at 466-67; *Mastrapa*, 509 F.3d at 658-60; Fed. R. Civ. P. 11 advisory committee's note (1966). If a defendant does not understand the elements of the offense in the first place, his statement that he is or is not guilty of that offense is meaningless. Thus, before the court could have found that defendant's plea lacked a factual basis based on his statement that he was not guilty, it would have had to confirm that defendant knew what guilt and innocence meant in the context of the firearm charge. Only if defendant had denied committing a specific element of the offense or protested his innocence even after demonstrating that he understood the charge would the court have had discretion to reject his plea for lack of a factual basis. Even then, the court would have had to have actually *exercised* its discretion and explained why it concluded that the plea lacked a factual basis.

**[10]** Accordingly, we are not satisfied that the district court's rejection of defendant's guilty plea was the result of an exercise of discretion made after consideration of all the relevant factors. We therefore vacate the court's decision to reject the plea. However, we cannot accept defendant's con-

tention that the district court was required to accept his plea. The court did not discuss all of the subjects listed in Rule 11(b)(2), nor did it determine that the plea was voluntary and supported by a factual basis. For this reason, the *Vasquez-Ramirez* principle — that a district court must accept a guilty plea that meets all of the Rule 11(b) requirements — does not govern this case. Rather, we will remand the case for a new plea hearing to enable the district court to ensure that the plea complies with Rule 11(b) and to properly exercise its discretion in determining whether to accept the plea. On remand, the district court must permit defendant to enter his guilty plea on the terms agreed to by the government — that is, a plea of guilty to the firearm count in exchange for dismissal of the remaining counts and a sentencing range of twenty-five to forty years.[4] If the court accepts the plea, it must enter a new judgment after sentencing defendant pursuant to the plea. In *United States v. Maddox*, 48 F.3d 555, 559-60 (D.C. Cir. 1995), which we cited with approval in *Vasquez-Ramirez*, 443 F.3d at 700, the court utilized this procedure. We have also used it in other cases where we concluded that a district court abused its discretion in rejecting a plea. *See, e.g. United States v. Mendoza*, 280 Fed. App'x 589, 590 (9th Cir. 2008).

Defendant asks that we direct that the case be assigned to a different judge on remand, and the government has not taken a position on reassignment. We deny the request because the district judge has not "exhibited personal bias requiring recusal," nor are there any "unusual circumstances" which warrant such reassignment. *In re Ellis* (*Ellis v. U.S. Dist. Court*), 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc).

## C.

Before proceeding to the remaining issue, we address one last matter in connection with the plea. The government

---

[4]The government has not indicated that it is unwilling to offer these terms on remand.

argues that even if the district court erred in rejecting the guilty plea, we may review only for plain error because defendant did not object after the court rejected his plea. However, as the Seventh Circuit has recently explained, a party does not "object" to a court's ruling; rather, when a party tries to inform the court that a ruling it has already made is erroneous, it is taking an "exception" to the ruling. *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009). Under Fed. R. Crim. P. 51(a), "[e]xceptions to rulings or orders of the court are unnecessary." Here, defendant asked the court to accept his plea and argued in favor of it. At that point, the court was required to ensure that the plea was appropriate. *See United States v. Alvarado-Arriola*, 742 F.2d 1143, 1144 (9th Cir. 1982) (recognizing district court's "duty," upon defendant's presentation of a guilty plea, to determine whether the plea is appropriate). For unspecified reasons, the district court rejected the plea. At that point, defendant did not have to ask the court to reconsider its decision or point out possible errors in the decision.

**[11]** Even assuming defendant had an obligation to object to the court's ruling, the court afforded him no opportunity to do so. Pursuant to Fed. R. Crim. P. 51(b), "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Here, when defendant stated that he was really not guilty, the court called for the jury, giving defendant's counsel no chance to object, raise an exception, or otherwise remonstrate. Under these circumstances, we cannot find that our review is limited to plain error.

To be sure, defendant's counsel might have better served her client had she interrupted the court, asked for an explanation of its decision and requested a recess to meet with her client and determine whether to ask the court to reconsider its rejection of the plea. But the Rules do not require a defendant to force an objection or exception into the record. Rather, exceptions are unnecessary, and an objection is required only

if the court affords a party the opportunity to make one. *See Cunningham*, 429 F.3d at 679-80 (noting that although it would have been desirable for defense counsel to call court's attention to its failure to explain discretionary ruling, the Rules did not require counsel to do so).

### III.

We next consider whether the district court erred in denying defendant's motion to suppress evidence obtained as a result of the warrantless search of the stash house. The district court found that defendant had no legitimate expectation of privacy in the stash house and that even if he did, the search was justified by exigent circumstances. We find that exigent circumstances justified the search and therefore do not decide whether defendant had a reasonable expectation of privacy in the stash house.

Whether exigent circumstances justified a warrantless search is a mixed question of law and fact which we review de novo. *United States v. Russell*, 436 F.3d 1086, 1089 n.2 (9th Cir, 2006). However, we review any findings of fact made by the district court in the course of its determination for clear error. *Id.*

**[12]** " '[W]arrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.' *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-394 (1978), alteration in *Brigham City*). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Id.* Many courts, including this one, have recognized that an ongoing hostage situation presents exigent circumstances. *Satchell v. Cardwell*, 653 F.2d 408, 411-12 (9th Cir. 1981) (recognizing that exigent circumstances justified war-

rantless entry into home where officer reasonably believed that woman was being held hostage inside); *see also United States v. Washington*, 573 F.3d 279, 288 (6th Cir. 2009) ("In burglary cases, the possibility that a lawful resident has been injured or is being held hostage gives rise to exigent circumstances."); *United States v. De Jesus-Batres*, 410 F.3d 154, 159 (5th Cir. 2005) (exigent circumstances justified warrantless search of garage suspected of containing smuggled alien hostages); *United States v. Richards*, 937 F.2d 1287, 1291 (7th Cir. 1991) (recognizing that officer does not need a warrant to enter the apartment of someone who is holding hostages inside); *Montana v. Hammer*, 759 P.2d 979, 983-84 (Mont. 1988) (exigent circumstances justified warrantless entry into home where defendant was holding hostages).

**[13]** In light of the principle that an ongoing hostage situation presents exigent circumstances, we find that the search of the stash house was reasonable. In the original phone call, the smugglers threatened to kill and rape the hostages if the ransom remained unpaid. The smugglers agreed to give family members until October 10th to pay the ransom before harming the hostages, but ICE did not locate the stash house until October 10th, and thus time was running out. Further, testimony at the hearing on the motion to suppress indicated that the officers' conclusion that they did not have time to obtain a warrant once they pinpointed the location of the stash house was reasonable. Both an ICE agent and a SAU officer testified about instances in which they waited too long to enter a stash house, resulting in people being raped or killed.

**[14]** Defendant argues that even if there were exigent circumstances, the government should have prepared in advance to obtain a warrant, and its failure to do so rendered the search unreasonable. He points out that between October 6, when ICE learned of the hostage situation, and October 10, when it located the stash house, ICE took no steps to prepare an application for a warrant or ensure that it could obtain a telephone warrant upon locating the stash house. However, under the

circumstances presented, the government was not required to anticipate exigent circumstances and prepare in advance to obtain a warrant.

Our decision in *United States v. Couch* is instructive. 688 F.2d 599, 603-04 (9th Cir. 1982). In *Couch*, customs agents seized a suspected drug smuggler at an airport and detained him without a warrant for an extended period of time based on a confidential informant's tip received the previous day. Because of the tip, the agents knew the day before that the smuggler would arrive but made no preparations for obtaining a warrant. The defendant argued that this failure made his extended warrantless detention unreasonable. However, this court rejected his contention, holding that the agents did not have to prepare to obtain a warrant because they could not have known one would be needed until the smuggler arrived at the airport and corroborated the informant's tip.

[15] Likewise, in the present case, ICE was not required to predict what would happen during the course of its investigation. Although ICE hoped that it would locate the hostages with help from the telephone service provider, the investigation could have taken a different turn during the days leading up to the search. Indeed, prior to locating the stash house, ICE did not even know if the hostages were being held inside a residence, inside a business, or out in the desert. (ER Vol. II at 67:17 to 68:6.) Until ICE located the stash house and confirmed the hostages' presence, it did not know that a warrant would be necessary or what to state in an affidavit. Upon locating the stash house, the ongoing threat of harm to the hostages justified an immediate entry. Thus, as in *Couch*, the agents in the present case were not required to apply for a warrant ahead of time or arrange for a telephonic warrant.[5] Accordingly, we affirm the district court's decision to deny

_____

[5]We add that we do not rule out the possibility that, under different circumstances, the failure to prepare a warrant in advance could be found to negate exigent circumstances.

the defendant's motion to suppress the fruits of the search of the stash house.

## IV.

For the reasons stated, we VACATE the district court's rejection of defendant's guilty plea and REMAND with instructions that the district court hold a new plea hearing and allow defendant to plead guilty to the firearm charge pursuant to the plea agreement. If the court accepts the plea, the court should sentence defendant in accordance with the plea and enter a new judgment. If the court rejects the plea, it must clearly state its reasons so that we can determine in any subsequent appeal whether the court abused its discretion. We AFFIRM the district court's denial of defendant's motion to suppress.

AFFIRMED in part, VACATED in part, and REMANDED.

RYMER, Circuit Judge, concurring in part and dissenting in part:

I would not allow Mancinas-Flores another crack at pleading guilty to the firearm charge. Having offered to enter a guilty plea, Mancinas-Flores told the judge during the Rule 11 colloquy: "I'm really not guilty." The judge then stopped the proceeding. I believe she had discretion to do so because Fed. R. Crim. P. 11(b)(3) requires a factual basis for a guilty plea. *Cf. In re Vasquez-Ramirez*, 443 F.3d 692, 695 & n.4, 700 n.9 (9th Cir. 2006) (holding that a district judge has no discretion to reject a guilty plea when all the requirements of Rule 11(b) are met, but does have discretion to reject a guilty plea "when he feels the plea has failed to meet the Rule 11(b) requirements").

At no point did Mancinas-Flores ask for a recess, a continuance, or an opportunity to explain his response, nor did he indicate that the court should treat his plea as a *nolo contendere* plea or as an *Alford* plea,[1] nor did he object at the hearing or later that the district court misunderstood his intentions, the nature of his plea, or the law. He did not ask to try again, or for reconsideration. *Now* he says he was offering an *Alford* plea, but in these circumstances I would decline to consider a theory about the plea that was nowhere presented to the district court.

Even assuming that what Mancinas-Flores really wanted to do was enter an *Alford* plea — despite the fact he never said so and did not state at the plea hearing that he was innocent — the district court had broad discretion to decline to go forward.[2] We have made clear that a court is under no obligation to accept an *Alford* plea. As we said in *United States v. O'Brien*, a court "may accept a guilty plea of one who pro-

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970). As the Tenth Circuit succinctly explained:

> A plea of nolo contendere is "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." An *"Alford"* plea, named after the Supreme Court's decision in *North Carolina v. Alford*, is a plea denominated as a guilty plea but accompanied by protestations of innocence.

*United States v. Buonocore*, 416 F.3d 1124, 1127 n.2 (10th Cir. 2005) (citation omitted).

[2] Actually, Mancinas-Flores' "I'm really not guilty" plea was neither a true *Alford* plea — where the defendant proclaims his innocence — nor a true *nolo contendere* plea —where the defendant does not admit guilt but accepts the court treating him as guilty for purposes of the particular case. Mancinas-Flores' proffer falls somewhere between the two, thus short of both, for which there is no precedent. If a defendant wants a court to accept a plea agreement but refuses to admit his own guilt, then he must navigate the waters of an *Alford* plea or a *nolo* plea. Mancinas-Flores never made that attempt, which is another reason I would adjure the course taken by the majority.

tests his innocence, *United States v. Alford*, but acceptance is not required." 601 F.2d 1067, 1069 (9th Cir. 1979) (citation omitted). Mancinas-Flores suggests that *O'Brien* is out-of-date, but *O'Brien* has never been overruled and indeed, *Alford* itself — and Rule 11 — makes the same point. *Alford*, 400 U.S. at 38 n.11; Fed. R. Crim. P. 11 advisory committee's note (1974); Fed. R. Crim. P. 11(a)(1).[3]

Mancinas-Flores argues, and the majority holds, that the district court's failure to explain its reasons means that it did not actually exercise its discretion. I disagree given the record in this case. Mancinas-Flores neither objected nor sought an explanation; no doubt it was as obvious to him then, as it is to me now, that the district court rejected his guilty plea because he said he really wasn't guilty. The court could do this whether his plea is characterized as it was at the time — an ordinary, "straight-up" guilty plea — or as it is now, a putative *Alford* plea. *See*, *e.g., O'Brien*, 601 F.2d at 1070 (declining to find abuse of discretion in rejecting guilty plea when a defendant refused to admit guilt); *Buonocore*, 416 F.3d at 1129-31 (upholding district court's discretion to adopt a general policy against *Alford* or *nolo* pleas).[4] If a district

---

[3]Although a type of guilty plea, the advisory committee notes indicate that an Alford plea is procedurally treated as a *nolo* plea. *See* Fed. R. Crim. P. 11 advisory committee's note (1974). Rule 11(a)(1) provides that a defendant may plead *nolo contendere* only "with the court's consent." The Tenth Circuit so held in *Buonocore*, 416 F.3d at 1127 n.2, 1129-31, aligning itself with *O'Brien*, but the Sixth Circuit took a different view in *United States v. Tunning*, 69 F.3d 107, 110-11 (6th Cir. 1995), holding that Rule 11 imposes no consent requirement akin to Rule 11(a)(1) for *Alford*-type guilty pleas. To the extent the majority is influenced by *Tunning*, *see* maj. op. at 15726, I believe we are instead bound by *O'Brien*.

[4]As the Tenth Circuit explained in *Buonocore*:

Secondary sources also provide support for the proposition that a district court has discretion to reject *Alford* or nolo pleas based on a general policy against such pleas. According to Wright and Miller, "the court is not required to accept a guilty plea from one who asserts he is innocent." 1A Charles Alan Wright & Arthur

court may reject an *Alford* plea as a matter of unarticulated preference, it follows that the court may do so without articulated reason.[5]

The reasons an *Alford* plea is problematic are, in any event, well recognized. To quote the Advisory Committee to Rule 11:

> The defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may

R. Miller, *Federal Practice and Procedure*, § 174, at 201-02 (3d ed. 1999). "It is discretionary with the court whether to accept the plea and it is wholly unlikely that refusal to accept the plea would be regarded as error on appeal." *Id.* § 177, at 294. According to the American Law Reports:

> One of the most important characteristics of the plea of nolo contendere, which distinguishes it fundamentally from the plea of guilty to which it is so frequently linked by the courts, is that its acceptance by the court is not a matter of right of the defendant but is *entirely* within the discretion of the court.

> All the later cases support the proposition that the plea of nolo contendere cannot be entered by the defendant as a matter of right but is pleadable only by leave of court, its acceptance by the court being *entirely* a matter of grace.

89 A.L.R.2d 540, § 14 (emphasis added).

[5]Curiously, the majority states that even if *Buonocore* is right and a district court may adopt a policy of refusing to accept all *Alford* pleas, it must at least disclose that it has such a policy and that it is rejecting the defendant's plea pursuant to that policy. Maj. op. at 16795. Here, of course, there is no indication that the district judge *had* any such policy. Nor is there any reason why she should have disclosed her position on *Alford* pleas; the word *Alford* was never mentioned. So we have no call in this case to opine one way or the other on how district courts ought to conduct a true *Alford* hearing. My point in relying on *Buonocore* (which, in turn, relied on *O'Brien*), is that if a district court may reject a real *Alford* plea on a blanket basis, it could certainly reject the hybrid plea in this case for which there is *no* basis at all.

therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions. The rule is intended to make clear that a judge may reject a plea of nolo contendere and require the defendant either to plead not guilty or to plead guilty under circumstances in which the judge is able to determine that the defendant is in fact guilty of the crime to which he is pleading guilty.

Fed. R. Crim. P. 11 advisory committee's note (1974) (quoted and relied upon in *Buonocore*, 416 F.3d at 1130). And, as we said in *O'Brien*, " '[h]owever legally sound the Alford principle, which . . . we do not dispute, the public might well not understand or accept the fact that a defendant who denied his guilt was nonetheless placed in a position of pleading guilty and going to jail.' " 601 F.2d at 1070 (quoting *United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971)).[6]

Beyond this, I disagree with the majority's premise that the district court might have rejected the plea for improper as well as proper reasons. Maj. op. at 16794. Rather, I presume that district judges know the law. *See, e.g., United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the

---

[6]What happened at sentencing in this case illustrates why "a judge may reject a plea of nolo contendere and require the defendant either to plead not guilty or to plead guilty under circumstances in which the judge is able to determine that the defendant is in fact guilty of the crime to which he is pleading guilty." Fed. R. Crim. P. 11 advisory committee's note (1974). Mancinas-Flores personally told the judge that "in no moment did I have anything to do with those people." Likewise, his objection to the presentence report states: "Mr. Mancinas-Flores maintains his plea of innocense and denies the allegations of the Indictment. Mr. Mancinas-Flores adamantly disputes the jury's findings of guilt. Based on his continuing plea of innocense, Mr. Mancinas-Flores holds that the statements of the witnesses, whether under oath or in the pre-sentence report, are false."

law and to apply it in making their decisions."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002). Thus, I presume that the experienced district judge in this case knew that she could accept a plea accompanied by protestations of innocence,[7] but that she didn't have to.

I also disagree with the majority's suggestion that *Vasquez-Ramirez* calls into question a district court's discretion to reject an *Alford* plea. Maj. op. at 16795. *Vasquez-Ramirez* concerned a routine guilty plea in which the defendant admitted guilt, unlike this case where Mancinas-Flores tried to enter a guilty plea while insisting that he is "really not guilty," or a typical *Alford* plea where the defendant asserts his innocence but is nevertheless willing to accept punishment and there is "strong evidence of actual guilt," *Alford*, 400 U.S. at 37. *Vasquez-Ramirez* does not purport to speak to the situation in this case, or to an *Alford* plea. *See* 443 F.3d at 694-95. Indeed, *Vasquez-Ramirez* cites *O'Brien* with approval for the proposition that "[a] trial court has discretion to accept or reject a guilty plea . . . of one who protests his innocence." *Id.* at 700 (citing and quoting *O'Brien*, 601 F.2d at 1069).

Finally, even if the district judge erred by failing to give reasons, I would simply remand for the court to explicate its ruling. In all the circumstances of this case, including that Mancinas-Flores went to trial without giving the district court *any* notice of *any* objection, I see no need for letting him go back to square one (now that he knows the result of trial and sentencing) without first allowing the district court the opportunity to cure the deficiencies Mancinas-Flores and this court have identified which, had they been timely identified, the court could have done to begin with.

Accordingly, I dissent from Part II, though I concur in Part III.

---

[7]To repeat, Mancinas-Flores did not state at the plea hearing that he was innocent.