TASHIMA, Circuit Judge,
dissenting:
I respectfully dissent. Derrick Loftis committed a despicable act when he sold drugs to a young girl. But that act, plus the fact that the girl later died in his presence, is insufficient to support a murder conviction. Given the nature of Loftis’ plea, the stark disconnect between the facts and the plea raises a substantial constitutional issue. Loftis’ West plea was tantamount to a claim of innocence, and the trial court thus violated clearly established federal law when it failed to identify any factual basis for the plea. This error had a substantial and injurious effect on the proceedings because nothing in the record suggests that Loftis acted with knowledge that he was endangering human life. I would, thus, grant Loftis’ ha-beas petition.
I
According to the state court probation report,[1] Loftis admitted to police that he *655 sold crystal meth to fifteen-year-old Cele-na V., and that after she consumed the crystal meth she “began to get ‘crazy ’ by freaking out, getting hot and shaking.” Richard Banuelos gave Celena some milk. Celena did not improve, but Loftis, Banue-los, Leslie Saiz, and Celena headed to a casino. On the way there, Loftis noticed that Celena was not breathing, attempted to wake her up by shaking her, and told the others that he wanted to take her to a hospital, to which Saiz responded that she was already dead. Saiz and Banuelos then took her body out of the car and covered it with tumbleweeds. Loftis, Banuelos, and Saiz continued on to the casino. Celena’s body was discovered about a month later.
Loftis was charged with murder, and eventually entered a plea of no contest to second-degree murder. There was no written plea agreement, Loftis did not complete a written plea form, and the parties never stipulated to a factual basis for the plea. When the court asked the parties to supply a factual basis for the plea at the plea colloquy, Loftis’ attorney stated that Loftis was pleading “pursuant to People versus West.”[2]
Loftis’ conviction was affirmed on appeal, and the district court denied his federal habeas petition.
II
A
When a defendant pleads guilty, he waives “[s]everal federal constitutional rights,” including “the privilege against compulsory self-incrimination[,] ... the right to trial by jury[, and] ... the right to confront one’s accusers.” Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A waiver of these rights must be voluntary and intelligent. Id at 242-43, 89 S.Ct. 1709; see also Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). “Central to the plea and the foundation for entering judgment against the defendant is the defendant’s admission in open court that he committed the acts charged in the indictment.” Id.
In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a guilty plea accompanied by protestations of innocence may be accepted only if the judge “test[s] whether the plea was being intelligently entered” by ensuring that there is a factual basis for the pled charge. Id at 38, 91 S.Ct. 160. Alford had been indicted for first-degree murder and pled guilty to second-degree murder. Id at 26-27, 91 S.Ct. 160. At the plea hearing, he testified that he did not commit the murder but was pleading guilty to avoid the threat of the death penalty.[3] Id. at 28, 91 S.Ct. 160. Before the court accepted the guilty plea, a police officer summarized the state’s case, and two other witnesses testified that “shortly before the killing Alford took his gun from his house, stated his intention to kill the victim, and returned home with the declaration that he had carried out the killing.” Id On appeal, Alford argued that his plea was invalid because it was the product of fear and coercion. Id at 29, 91 S.Ct. 160.
The Court explained that Alford’s protestation of innocence presented a potential problem, because “[o]rdinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant’s admission that he committed the crime charged *656 against him and his consent that judgment be entered.” Id. at 32, 91 S.Ct. 160. When Alford asserted that he was innocent, he created “a factual and legal dispute between him and the State” as to his guilt. Id. This was problematic because the admission of guilt is “normally ‘central to the plea and the foundation for entering judgment.’ ” Id. (quoting Brady, 397 U.S. at 748, 90 S.Ct. 1463) (internal alterations omitted). “Without more, it might be argued that the conviction ... was invalid, since his assertion of innocence negatived any admission of guilt....” Id. (emphasis added).
The “more” that made Alford’s guilty plea valid was that when the plea was “viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned.” 400 U.S. at 37-38, 91 S.Ct. 160 (citing McCarthy v. United States, 394 U.S. 459, 466-67, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). The cited portion of McCarthy explains that Federal Rule of Criminal Procedure 11, which requires the court to determine that there is a factual basis for a guilty plea before entering judgment, “is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.” McCarthy, 394 U.S. at 467, 89 S.Ct. 1166 (internal quotation marks omitted). Therefore, when a defendant pleads guilty, but protests his innocence, the trial court ensures that the plea is intelligent by determining that there is a factual basis for the plea. Alford, 400 U.S. at 38, 91 S.Ct. 160; see also United States v. King, 257 F.3d 1013, 1022 (9th Cir.2001); United States v. Neel, 547 F.2d 95, 96 (9th Cir.1976).
B
Loftis pled no contest under California law and cited People v. West. This plea was sufficient to trigger the factual basis requirement under Alford.
1
The United States Supreme Court, the Ninth Circuit, and the California Supreme Court all interpret a plea pursuant to People v. West to mean that the defendant does not admit factual guilt but pleads to avoid a more serious punishment. See Roe v. Flores-Ortega, 528 U.S. 470, 473, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (noting in dicta that a People v. West plea “per-mites] a defendant both to deny committing a crime and to admit that there is sufficient evidence to convict him”); Doe v. Woodford, 508 F.3d 563, 566 n. 2 (9th Cir.2007) (noting that a People v. West plea “does not require an admission of guilt and is the California equivalent of an Alford plea”); In re Alvernaz, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 752 (1992) (describing a People v. West plea as a “plea of nolo contendere, not admitting a factual basis for the plea”).
Our holding in United States v. Vidal, 504 F.3d 1072 (9th Cir.2007) (en banc), is dependent on the premise that a defendant does not admit factual guilt when he pleads guilty pursuant to People v. West. In that case, the defendant pled guilty to a crime, and was subject to a sentencing enhancement for a prior offense. Id. at 1074-75. For that prior offense, the defendant had pled guilty pursuant to People v. West and no recitation of the factual basis for defendant’s plea appeared on the written plea and waiver of rights form. Id. at 1075. Instead, as in this case, “only ‘People v. West ’ [wa]s entered in the section that requests a description of facts *657 supporting any charges.” Id. The en banc court held that the record for the prior offense “fails to establish the factual predicate for [the defendant]^ plea of guilty pursuant to People v. West.” Id. at 1087. This is because “unless the record of the plea proceeding reflects that the defendant admitted to facts, a West plea, without more, does not establish the requisite factual predicate to support a sentence enhancement.” Id. at 1089.
These precedents establish that, wrhen a defendant pleads guilty in California state court pursuant to People v. West, the trial court must ensure that the defendant’s plea is intelligent by ensuring that there is a factual basis for the plea. Moreover, the California precedent cited by Judge Adel-man is not to the contrary. For example, People v. Rauen correctly noted that “West did not actually involve a claim of innocence,” 201 Cal.App.4th 421, 133 Cal.Rptr.3d 732, 734 n. 1 (2011). But more importantly, that court also stated that a West plea, “also referred to as an Alford plea, based on North Carolina v. Alford, allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence.” Id. at 734 (citation omitted).[4]
Judge Adelman also stresses that the defendant in West did not explicitly proclaim innocence, and thus concludes that a West plea is distinguishable from an Alford plea. Nothing in Alford, however, requires an express protestation of innocence. Indeed, the Ninth Circuit has not limited the Alford rule to pleas accompanied by claims of innocence, but instead has held that “the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances.” Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir.1985) (per curiam).[5] Given the uniformity of published authority equating West and Alford pleas, it is clear that, even if a West plea were not equivalent to a claim of innocence, it at least qualifies as such a “special circumstance.”[6]
*658 2
The fact that Loftis pled no contest rather than guilty does not alter the outcome. As explained above, Alford requires the trial judge to ensure that there is a factual basis for a guilty plea when a defendant protests his innocence because the protest undermines the “express admission of guilt” that is “normally central to the plea and the foundation for entering judgment.” 400 U.S. at 32, 37, 91 S.Ct. 160. By contrast, the Court explained that if Alford had entered a nolo contendere plea, which “has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty,” the Court could simply treat him as if he were guilty. Id. at 36 & n. 8, 37, 91 S.Ct. 160; see also id. at 37, 91 S.Ct. 160 (equating “a plea that refuses to admit commission of the criminal act” with a guilty plea accompanied by both a protestation of innocence and “strong evidence of factual guilt”). Therefore, when a defendant enters a plea that ordinarily includes an admission of guilt and simultaneously protests his innocence, the trial court may accept the plea only if it determines that there is a factual basis for the charge.
Loftis’ no contest plea under People v. West was unlike the classic nolo contende-re plea discussed in Alford because in California a nolo contendere plea “admits every element of the crime charged and is the legal equivalent of a verdict and is tantamount to a finding.” People v. Wallace, 33 Cal.4th 738, 16 Cal.Rptr.3d 96, 93 P.3d 1037, 1043 (2004) (internal quotation marks and citations omitted). In California, a nolo contendere plea is the same as a guilty plea “for all purposes,” and “upon a plea of nolo contendere, the court shall find the defendant guilty.” Cal.Penal Code § 1016(3). When a defendant enters a nolo contendere plea, the court is required by state law to “ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty.” Id.
“[T]he Constitution is concerned with the practical consequences, not the formal categorizations, of state law.” Alford, 400 U.S. at 37, 91 S.Ct. 160. In California, the practical consequences of a nolo con-tendere plea are identical to the practical consequences of a guilty plea. Because an ordinary California nolo contendere plea admits a factual basis for the plea, for Alford purposes it is the same as a guilty plea. But, by adding a citation to People v. West to either plea, a defendant creates a “dispute between him and the State.” Id. at 32, 91 S.Ct. 160.[7] Otherwise, the defendant’s express reference to People v. West when entering his plea becomes meaningless.
In sum, when a defendant enters a plea which, although admitting factual guilt, simultaneously protests his innocence, the trial court must ensure that the plea is intelligent by determining that there is a factual basis for the plea, regardless of the nomenclature. Loftis entered a plea which admits factual guilt, but simultaneously protested his innocence by citing People v. West. The trial court violated clearly es *659 tablished law under Alford when, under these circumstances, it failed to determine the existence of a factual basis for Loftis’ plea.
Ill
A
The California Court of Appeal assumed that the trial court committed error, but determined that the error was harmless. Even when a state court determines that an error is harmless beyond a reasonable doubt, which the state court did not do in this case, this Court “need not conduct an analysis under AEDPA of whether the state court’s harmlessness determination on direct review ... was contrary to or an unreasonable application of clearly established federal law.” Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir.2010) (citing Fry v. Pliler, 551 U.S. 112, 119-20, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)); see also Merolillo v. Yates, 663 F.3d 444, 454-55 (9th Cir.2011).
Instead, when evaluating a constitutional error in a plea-taking on habeas, we ask “whether the state court’s error ... had a ‘substantial and injurious effect’ on [petitioner].” Buckley, 441 F.3d at 697 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). When a trial court fails to ensure a factual basis for an Alford plea on direct appeal we ask whether there is “[sjuffi-cient evidence indicating guilt” and “need not convince [ourselves] of guilt beyond a reasonable doubt.” King, 257 F.3d at 1022; see also Neel, 547 F.2d at 96. Accordingly, if there is insufficient evidence indicating Loftis’ guilt, the failure to establish a factual basis for his plea had a substantial and injurious effect on him. See Buckley, 441 F.3d at 698 (holding that the error had a “substantial and injurious effect” on petitioner because it caused him to receive a longer sentence).[8]
B
In California, second-degree “[mjurder is the unlawful killing of a human being ... with malice aforethought.” CaLPenal Code § 187. There are three types of second degree murder: (1) “unpremeditated murder with express malice,” (2) “implied malice murder,” and (3) “second degree felony murder.” People v. Swain, 12 Cal.4th 593, 49 Cal.Rptr.2d 390, 909 P.2d 994, 998 (1996). The first type clearly does not apply in this case. As I explain below, there is insufficient evidence supporting a second-degree murder conviction under either an implied malice or a felony murder theory.
1
“[A] killer acts with implied malice only when acting with an awareness of endangering human life.” People v. Knoller, 41 Cal.4th 139, 59 Cal.Rptr.3d 157, 158 *660 P.Bd 731, 739 (2007). In Knoller, the California Supreme Court reversed an intermediate appellate court which had held that a theory of implied malice “can be based simply on a defendant’s awareness of the risk of causing serious bodily injury to another.” Id., 59 Cal.Rptr.3d 157, 158 P.3d at 732; see also People v. Phillips, 64 Cal.2d 574, 51 Cal.Rptr. 225, 414 P.2d 353, 363 (1966) (approving second-degree murder instruction that the killing must result from the defendant’s act, “the natural consequences of which are dangerous to life, which act is deliberately performed by a person who knows that his conduct endangers the life of another”) (emphases added), overruled on other grounds by People v. Flood, 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 957 P.2d 869, 882 (1998).
Under these standards, the trial court did not have a sufficient factual basis to conclude that Loftis was aware that his actions endangered Celena’s life. Assuming, without deciding, that this Court can rely on the probation report that was produced after the plea colloquy, nothing in the probation report supports a finding of guilt. According to the probation report, after Celena ingested the crystal meth, she began to get “ ‘crazy,’ by freaking out, getting hot and shaking.” There is absolutely no indication that Loftis knew at that point that Celena’s life was in danger. Later, in the car, Loftis “told the others he wanted to take her to the hospital,” but “Saiz said no, that she was gone (dead).” Thus, once Loftis demonstrated an awareness that Celena’s life was in danger he believed that he could no longer take any action to save her life because she was already dead. The fact that Loftis wanted to take Celena to the hospital when he realized the severity of her condition suggests that he had not recognized that her life was in danger when she was ill earlier in the evening. See People v. Whisenhunt, 44 Cal.4th 174, 79 Cal.Rptr.3d 125, 186 P.3d 496, 527 (2008) (holding that there was no substantial evidence to support a theory of implied malice murder in a case in which testimony indicated that the defendant was initially “vaguely concerned about [the victim]’s condition,” and “did not become seriously concerned about [the victimj’s condition until several hours later ... at which point ... he immediately” sought medical help).
2
The State does not argue that the facts in this case support an implied malice theory of second-degree murder. Instead, the State argues that the probation report supports a theory under which the actus reus of the murder was Loftis’ failure to act after providing Celena with drugs. The State does not explain how this theory maps onto any of California’s three types of second-degree murder. See Swain, 49 Cal.Rptr.2d 390, 909 P.2d at 998. And the State does not cite any statute or case supporting its contention that this theory is sufficient for a second-degree murder conviction.[9]
The State’s argument is closest to arguing that there is a sufficient factual basis for second-degree felony murder. But in order to be convicted based on second-degree felony murder, the defendant had to commit an “inherently dangerous felony,” which is “an offense carrying a high probability that death will result.” People v. Patterson, 49 Cal.3d 615, 262 Cal.Rptr. 195, 778 P.2d 549, 553, 558 (1989) (internal quotation marks omitted). “In determining whether a felony is inherently danger *661 ous, the court looks to the elements of the felony in the abstract, not the particular facts of the case, i.e., not to the defendant’s specific conduct.” People v. Hansen, 9 Cal.4th 300, 36 Cal.Rptr.2d 609, 885 P.2d 1022, 1026 (1994) (internal quotation marks omitted), overruled on other grounds by People v. Sarun Chun, 45 Cal.4th 1172, 91 Cal.Rptr.3d 106, 203 P.3d 425, 442 (2009). The State has not cited, and we are not aware of, any California case which has held that furnishing crystal meth, or any other felony for which there is a factual basis in this case, is inherently dangerous for the purpose of the second degree felony murder rule. Compare, e.g., People v. James, 62 Cal.App.4th 244, 74 Cal.Rptr.2d 7, 23 (1998) (manufacturing meth is an inherently dangerous felony). Nor does the State argue that this Court should establish that furnishing crystal meth is an inherently dangerous felony. Accordingly, the State’s alternate theory fails.
IV
Because I conclude that there is insufficient evidence indicating Loftis’ guilt, the trial court’s failure to establish a factual basis for his plea had a substantial and injurious effect.[10] I would therefore reverse the district court’s judgment denying the petition for writ of habeas corpus and remand with directions to issue a conditional writ releasing Loftis from custody, unless, within a reasonable period of time, the State recommences proceedings against Loftis. I respectfully dissent.

. This report, of course, was not before the court at the plea-taking. But consistent with the state appellate court’s reliance on it and the majority’s reliance on it, by reference, see Maj. op. at 646-47, I refer to it as the most complete recounting of the facts in this case.

. People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970).

. Similarly, Loftis' plea was based on "avoiding] the possibility of being convicted of first degree murder.” Maj. op. at 647.

. Similarly, although the two unpublished decisions cited in Judge Adelman's opinion mention that West pleas are not identical to Alford pleas because they do not involve claims of innocence, neither decision holds that a West plea does not trigger Alford’s factual inquiry requirement. See In re Mills, 2011 WL 4005394, at *4 (Cal.Ct.App.2011); People v. Wampler, 2010 WL 1435040, at *2 n. 2 (Cal.Ct.App.2010). Moreover, these decisions cannot inform our analysis of California law because unpublished decisions of the California intermediate appellate courts are not precedential — they cannot be relied on as authoritative pronouncements of California law. See Cal. Rule of Court 8.1115 ("an opinion of a California Court of Appeal ... that is not certified for publication ... must not be cited or relied on by a court or party in any other action”).

. United States v. Mancinas-Flores, 588 F.3d 677 (9th Cir.2009), cited by Judge Adelman, is of little relevance. Mancinas-Flores was a direct criminal appeal in which the defendant argued a violation of Fed.R.Crim.P. 11; it was not a habeas case brought by a state prisoner raising constitutional issues. Further, Mancinas-Flores’ citation to the Advisory Committee’s 1966 note is out of date. Alford was not decided until four years later, in 1970. Thus, the Advisory Committee’s 1974 note, citing Alford, recognizes that "[a] plea of nolo contendere is, for purposes of punishment, the same as the plea of guilty.” Fed. R.Crim.P. 11, advisory committee note (1974). ’ '

.The Second and Fifth Circuits have also recognized that a claim of innocence is not a pre-requisite to the application of Alford. Thus, the Second Circuit has noted that "[t]he distinguishing feature of an Alford plea is that the defendant does not confirm the factual basis of the plea.” United States v. Savage, 542 F.3d 959, 962 (2d Cir.2008). And in Banks v. McGougan, 717 F.2d 186, 188 (5th Cir.1983), the Fifth Circuit agreed with the holdings from five other circuits that "absent statements inconsistent with guilt, state courts are not constitutionally required to establish a *658 factual basis for the plea of guilt.” The Banlcs court then held that inquiry is required where the state judge "is put on notice that there may be some need for such an inquiry.” Id. None of these formulations of the Alford rule requires an express claim of innocence.

. Judge Adelman’s reliance on unpublished out-of-circuit decisions, see Maj. op. at 648-49, is also unavailing (even assuming that such decisions should be given any weight) because the nolo contendere pleas involved in those cases were not the same as and, thus, did not have the same legal significance as a West plea.

. Judge Silverman argues that we must defer to the California Court of Appeal's harmless error analysis. This is contrary to the rule, however, that “we apply the Brecht test without regard for the state court’s harmlessness determination.” Pulido, 629 F.3d at 1012. This principle applies even where the harmlessness determination involves, as is often the case, the application of state law. See, e.g., Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995) (addressing de novo whether the jury's consideration of extrinsic evidence bearing on intent to commit robbery was harmless). As Judge Silverman recognizes, we defer to state court interpretations of state law, but, in this case, there is no such interpretation of state law to defer to. The harmlessness question is simply whether there is sufficient evidence in the record to support a second-degree murder conviction. Compare Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (per cu-riam) (holding that a federal habeas court must defer to a state-court interpretation of the transferred intent doctrine as applied to a state murder statute).

. Even assuming that, as the state court found, Loftis could have been convicted based on an omission — which requires an underlying duty to act — there is still nothing in the record to indicate that Loftis failed to act and knew that his failure endangered Celena's life.

. Loftis also separately claims that his plea was not intelligent and voluntary. I would dismiss as unexhausted any claim that his plea was not intelligent and voluntary that is not based on his Alford argument.